255 N.J. Super. 169 (1992)
604 A.2d 687
ROBIN L. SCHASER, PLAINTIFF,
v.
STATE FARM INSURANCE COMPANY, THE HARLEYSVILLE INSURANCE COMPANIES, AND NEW JERSEY MANUFACTURERS INSURANCE COMPANY, DEFENDANTS. NATIONAL UNION FIRE INSURANCE COMPANY, INTERVENING DEFENDANT.
Superior Court of New Jersey, Law Division Cumberland County.
Decided February 19, 1992.
*170 Eisenstat, Gabage & Berman attorneys for Plaintiff (Charles W. Gabage).
Horn, Kaplan, Goldberg, Gorny & Daniels attorneys for defendant, State Farm Insurance Company (L. Patricia Sampoli.)
Cooper, Perskie, April, Niedelman, Wagenheim & Levenson, attorneys for defendant, The Harleysville Insurance Company (Susan Petro).
Yampell, Nicodemo & Caruthers, attorneys for defendant, New Jersey Manufacturers Insurance Company (Donald Caruthers, III).
Slimm, Dash & Goldberg, attorneys for defendant-intervenor, National Union Fire Insurance Company (Kenneth J. Sylvester).
*171 KLEINER, J.S.C.
In a suit for a declaratory judgment, plaintiff, Robin L. Schaser, has filed a motion for summary judgment requiring this court to construe N.J.S.A. 17:28-1.1(c) as it pertains to the computation and award of multiple uninsured motorist coverages. The court must also analyze the effect upon the ultimate award of N.J.S.A. 34:15-40 as it pertains to liens of workers' compensation insurance carriers against uninsured motorist coverage benefits payable to an injured employee. Although the issues raised do not appear to be factual oddities, nevertheless, the precise facts have not as yet been addressed in any reported New Jersey judicial decision.
On November 7, 1986, plaintiff was a passenger in an insured motor vehicle owned and operated by Thomas L. Lucas which was insured by defendant, Harleysville Insurance Company, (hereafter Harleysville). The Harleysville policy provided single limit uninsured motorist coverage of $100,000. Lucas' vehicle was involved in a collision with a vehicle owned and operated by David L. Tucker which was uninsured.
Plaintiff and her host driver, Lucas, were co-employees of J.C. Erlich, and were engaged in the course of their employment when the accident occurred. Erlich was insured for workers' compensation by defendant, National Union Fire Insurance Company, (hereafter National Union.)[1]
Plaintiff was also the named insured on her personal automobile liability insurance policy issued by defendant, State Farm Insurance Company (hereafter State Farm) which provided $15,000.00 uninsured motorist coverage.
*172 Additionally, plaintiff was a resident of her father's household. Plaintiff's father, John Schaser, was the named insured on an automobile liability insurance policy issued by defendant, New Jersey Manufacturers Insurance Company, (hereafter N.J.M.), which provided a $35,000.00 single limit uninsured motorist endorsement. As a resident relative, plaintiff is entitled to uninsured motorist insurance coverage provided by N.J.M.
Plaintiff and her host driver, Lucas, were both severely injured in this collision. Plaintiff, who was barred from asserting any claim against Lucas, N.J.S.A. 34:15-8, did assert the following claims: (a) workers' compensation claim against her employer, insured by National Union; (b) negligence claim against the uninsured motorist, Tucker;[2] (c) claims for uninsured motorist coverage against Harleysville (Lucas' insurer), State Farm (plaintiff's personal automobile insurer) and N.J.M. (plaintiff's father's insurer).
Lucas, also asserted a claim for uninsured motorist coverage under his own Harleysville policy. That policy required all automobile uninsured motorist claims to be arbitrated.
Recognizing that the Harleysville policy afforded single limit coverage of $100,000. and that both plaintiff and Lucas were severely injured, their respective counsel agreed to submit the claims to arbitration and agreed to divide the single limit insurance coverage pro rata, based upon the amount of each award in proportion to the total of both awards.
The arbitrators awarded plaintiff $400,000. and awarded Lucas $910,000. Thus, by agreement, plaintiff was entitled to receive 400/1310ths or .30534 percent of the $100,000. coverage *173 or $30,534. and Lucas was entitled to receive 910/1310ths or $69,466.
N.J.S.A. 17:28-1.1(c) provides:
"... c. Uninsured and underinsured motorist coverage provided for in this section shall not be increased by stacking the limits of coverage of multiple motor vehicles covered under the same policy of insurance nor shall these coverages be increased by stacking the limits or coverage of multiple policies available to the insured. If the insured had uninsured motorist coverage available under more than one policy, any recovery shall not exceed the higher of the applicable limits of the respective coverages and the recovery shall be prorated between the applicable coverages as the limits of each coverage bear to the total of the limits ..."
All parties contend correctly that an insured cannot collect a sum greater than, "the higher of the applicable limits of the respective coverages" or, in this case, $100,000. However, the parties cannot agree as to the respective contribution of each insurance carrier. Plaintiff contends she is entitled, pursuant to N.J.S.A. 17:28-1.1(c) to $30,534. from Harleysville, $15,000. from State Farm and $35,000. from N.J.M. or uninsured benefits totalling $80,534. This contention which is disputed necessitated this declaratory judgment proceeding.
Defendant, National Union, has filed a separate cross-motion for summary judgment in which it argues that pursuant to N.J.S.A. 34:15-40 et seq. any sum awarded plaintiff for uninsured motorist coverage is subject to its lien, less deductions up to 331/2 percent of the award, representing attorney's fees, and up to $200.00 representing reimbursable litigation expenses of its employee (Schaser) in pursuing a successful third party claim against the tortfeasor Tucker.

I. UNINSURED MOTORIST COVERAGE
Plaintiff contends she should recover $80,534. computed as follows: $30,534. payable by Harleysville ($100,000. single limit policy divisible between plaintiff and Lucas pursuant to arbitration), $15,000. payable by State Farm and $35,000. payable by N.J.M.
*174 State Farm, however, stresses that the language of N.J.S.A. 17:28-1.1(c) that:
"... and the recovery shall be pro rated between the applicable coverages as the limits of each coverage bear to the total of the limits."
is ignored by plaintiff's contention.
It contends that the statute not only imposes a limitation on the recovery total of $100,000. but urges that the court must total the available coverages as the first step in determining the amount of the plaintiff's award. In this case, the coverages total $150,000. On a pro rata basis, State Farm contends that its policy of $15,000. is 10 percent of the total available coverage and thus, State Farm should contribute 10 percent of the maximum award limitation of $100,000. or $10,000.
N.J.M. concurs in the argument of State Farm. It contends that its coverage of $35,000. is equivalent to 23.3 percent of the total available coverage of $150,000. and therefore, it suggests that it must contribute 23 percent of $100,000. to the plaintiff's combined award, or $23,000.[3]
Harleysville has taken no position as to the method of interpreting N.J.S.A. 17:28-1.1(c) contending that its contribution pursuant to either alternative will be $30,534.36.
Plaintiff's analysis will result in an award of $80,534.36, while defendants' analysis would result in an award of $63,534.36.
The only reported decisions dealing with this section of the applicable statute are Cuevas v. Allstate Ins. Co., 234 N.J. Super. 461, 560 A.2d 1317 (Law Div. 1986) and Rox v. Allstate Ins. Co., 250 N.J. Super. 536, 595 A.2d 563 (Law Div. 1991).
In Cuevas, the court was called upon to determine the distribution of uninsured motorist coverage among five claimants: Cuevas, C. Soto, L. Soto, Feliciano and Perez. Both policies involved were issued by Allstate Insurance Company *175 and both policies provided coverage of $15,000. per person and $35,000. per accident. All five individuals were eligible claimants under one policy but only Cuevas was entitled to recover under the second policy which insured his uncle.[4]
Arbitration resulted in the following awards: Cuevas, $12,000.; C. Soto, $10,500.; L. Soto, $5,000.; Feliciano, $3,000.; Perez, $10,000. The awards totalled $40,500.
The court concluded that N.J.S.A. 17:28-1.1(c) limited each claimant to a maximum recover of $15,000. The Cuevas court was not required to deal with the pro rata policy provisions of that statute as no arbitration award exceeded applicable policy coverage limits.[5]
The Cuevas court did analyze the applicable statute 234 N.J. Super. at page 464, 560 A.2d 1317,

N.J.S.A. 17:28-1.1(c) specifically prohibits the concept of stacking of limits of multiple coverages available to an insured for the purpose of increasing limits of coverage. It further clarifies the situation, where an insured has multiple U.M. coverages available with different limits, by restricting recovery to the highest coverage limits and requiring that such recovery be pro rated between the applicable coverage as the limits of each coverage bear to the total of the limits.
The plain meaning of the statute is to prevent the increasing of coverage limits by "stacking" thereby restricting an insured's recovery to the limits of the policy with the highest U.M. limits, and providing for a means of allocation with other available U.M. policies. [Emphasis added].
*176 In Rox v. Allstate Ins. Co., supra, the court, after construing a self-insured municipality's responsibility for uninsured motorist coverage held, 250 N.J. Super. at 543, 595 A.2d 563,
Co-defendant City is responsible for a concurrent and pro rata share of any reward [sic] rendered in favor of the plaintiffs up to the total of $15,000. each, with its pro rata share being the percentage which is applicable coverage of $15,000. bears to the total of all applicable coverages available to each of the plaintiffs. City is responsible for a pro rata share of any reward [sic] rendered in favor of plaintiff Rox up to the total amount of $15,000. and its pro rata share would be that percentage which its applicable coverage of $15,000. bears to the total of all applicable coverages, which in this case would be $115,000. That percentage would be 13.04 percent and plaintiff Rox would be entitled to uninsured motorist coverage up to $100,000. which is the higher limit contained in the Allstate policy. [Emphasis added].
As the arbitration award to Rox is not mentioned in that court's decision, the actual judicial result in Rox, is not of assistance in reaching a conclusion in the case before this court.
The plaintiff's argument, herein, adopts the stacking of insurance coverage concept sanctioned by Motor Club of America Ins. Co. v. Phillips, 66 N.J. 277, 330 A.2d 360 (1974), see also Christy v. City of Newark, 102 N.J. 598, 510 A.2d 22 (1986), but which was specifically nullified by the enactment of N.J.S.A. 17:28-1.1(c), commonly referred to as "anti-stacking" legislation.
Under the plaintiff's approach, the court should permit the plaintiff to recover the maximum total of available benefits, including her share of the arbitration award, as long as the total is less than the highest coverage available which highest coverage constitutes the outer limit of the plaintiff's recovery. In this analysis, plaintiff's maximum recovery would be $100,000. Plaintiff would add the $15,000. (State Farm), $35,000. (N.J.M.) and the arbitration award, $30,534. (Harleysville), totalling $80,534. Since that total is less than $100,000. the outer limit of recovery, pursuant to N.J.S.A. 17:28-1.1(c), plaintiff contends she is entitled to $80,534.
However, plaintiff's approach fails to give any attention to the full import of N.J.S.A. 17:28-1.1(c), which is designed to prevent stacking of insurance coverage. Plaintiff ignores the *177 pro rata requirement. That statute is written in the conjunctive.
If the insured had uninsured motorist coverage available under more than one policy, any recovery shall not exceed the higher of the applicable limits of the respective coverages and the recovery shall be prorated between the applicable coverages as the limits of each coverage bear to the total of the limits. [Emphasis added].
Although the legislative mandate fails to specifically address the situation posed by the instant case where a single policy must be divided among multiple claimants, whose individual claims exceed the available coverage, nonetheless, the statute as enacted does create an unambiguous formula for the payment of uninsured motorist coverage, irrespective of the number of claimants or the number of insurance policies providing coverage.
The statute permits an insurance carrier the ability to know the outer limit of a claimant's recovery and its pro rata contribution responsibility to the total recovery. In this case, for example, State Farm by identifying the coverage limits available can discern before the Harleysville policy arbitration proceeding that plaintiff's recovery will be limited to $100,000. and its share will never exceed $10,000. Under plaintiff's stacking concept analysis, State Farm will know immediately that plaintiff's maximum recovery will be $100,000., however, it may only determine its ultimate contribution after the conclusion of the Harleysville arbitration. It is clear that by giving effect to the plain language of the statute which is written in the conjunctive, a clear and discernible limit of recovery and insurance carrier contribution is established. Plaintiff's approach requires insurance carriers providing uninsured motorist coverage, such as State Farm or N.J.M., to await the result of the Harleysville arbitration to determine their respective contributions. Such an approach contradicts the clear statutory mandate and should not be sanctioned by this court.
Thus, plaintiff's recovery is $63,534.69 computed as follows: Harleysville, $30,534.36; State Farm, $10,000.; N.J.M., $23,333.33.

*178 II. WORKERS' COMPENSATION ISSUES
As a result of a compensable accident arising from plaintiff's employment on November 7, 1986, National Union Insurance Company (hereafter called National Union) has provided plaintiff with $113,524.97 in workers' compensation benefits.
The court's conclusion in Section I of this opinion, ante, has awarded plaintiff $63,534.61 from multiple uninsured motorist insurance coverages.
In anticipation of that award, National Union asserted a lien, pursuant to N.J.S.A. 34:15-40 against those uninsured motorist proceeds. Plaintiff, by motion, seeks summary judgment declaring National Union's lien invalid.
The interrelationship of our workers' compensation statute and the right of an injured party to recover uninsured motorist coverages has been thoroughly analyzed by our courts.
In Montedoro v. City of Asbury Park, 174 N.J. Super. 305, 416 A.2d 433 (App.Div. 1980), the workers' compensation insurance carrier paid $2750. in benefits and was permitted to assert a lien upon an uninsured motorist award obtained in an arbitration proceeding totalling $14,500. The court permitted this recovery due to the fact that had the uninsured driver been insured, a lien would be statutorily permitted pursuant to N.J.S.A. 34:15-40(b). The court created an equitable remedy analogous to the statutory lien.
In Midland Ins. Co. v. Colatrella, 102 N.J. 612, 510 A.2d 30 (1986) an injured worker recovered $9,270.52 in compensation benefits and thereafter settled an uninsured motorist claim, prior to arbitration, from a policy affording $30,000. in coverage. The Supreme Court also sanctioned an equitable remedy after reviewing the statutory remedy available pursuant to N.J.S.A. 34:15-40(b), had the uninsured motorist been, in fact, insured.
The distinction between Midland, and Montedoro, supra, was that in Montedoro, the uninsured motorist coverage was *179 purchased by the injured claimant's employer, and in Midland, the insurance was purchased by the insured employee. The Midland decision declared that this distinction has no significance in determining whether the compensation insurance carrier has the right to seek reimbursement.
Thus, where an insured recovers workers' compensation benefits and subsequently recovers uninsured motorist benefits through an arbitration award or by settling an arbitration claim for less than the available insurance coverage, an equitable lien for reimbursement is assertable by the compensation carrier.
National Union's claim for subrogation or reimbursement through the mechanism of an equitable lien is challenged by plaintiff who relies upon Midland Ins. Co. v. Colatrella, supra, wherein the court stated at 102 N.J. 612, 619, 510 A.2d 30:
"... we do not reach the more difficult question whether the workers' compensation lien should attach when the uninsured motorist coverage is less than the full amount of plaintiff's damages."
and the subsequent opinion in Charnecky v. American Reliance Ins., 249 N.J. Super. 91, 592 A.2d 17 (App.Div. 1991).
In Charnecky, the plaintiff received $158,819.59 in workers' compensation benefits and subsequently received $100,000. in uninsured motorist coverage. That sum constituted the total available coverage and was paid without arbitration.
When the compensation carrier asserted its equitable lien to recoup those uninsured motorist benefits, the plaintiff, Charnecky, resisted the claim, contending, that the value of her tort claim exceeded $100,000. and therefore reimbursement was not required, citing Midland Ins. Co. v. Colatrella, supra.
The court in Charnecky remanded the case to the law division for a determination of the value of Charnecky's tort claim but stated, at p. 94, 592 A.2d 17:
Where an injured party's combined compensation and U.M. recoveries do not indemnify him in full for his loss, the remedy fashioned in Midland to forestall double recovery is inappropriate and unjust. The relevant equitable principle is that "the right of subrogation does not arise until the injured party has been *180 made whole." Culver v. Ins. Co. of North America, 221 N.J. Super. 493, 500, 535 A.2d 15 (1987), rev'd. on other grounds 115 N.J. 451, 559 A.2d 400 (1989).
Although this court respectfully disagrees with the characterization in Midland, that the issue is troublesome, or the conclusion of Charnecky, as a trial court, Charnecky is binding and is therefore dispositive of the pending motion.[6]
In this case, unlike Charnecky, the value of plaintiff's tort claim has been established. In the uninsured motorist coverage arbitration proceeding, the plaintiff's damages were fixed at $400,000. In a proceeding conducted pursuant to R. 4:43-2(b), the plaintiff recovered a judgment of $618,942.50.[7]
Under either outcome, the value of plaintiff's tort claim exceeds the combined total of her workers' compensation payments $113,524.97, and her uninsured motorist insurance recovery, $63,534.69. Her total recovery, $117,059.66 is less than the value of her tort claim, either $400,000. or $618,942.50, and pursuant to Charnecky, National Union may not assert an equitable lien upon plaintiff's uninsured motorist insurance proceeds.

SUMMARY
Judgment is hereby rendered in favor of the plaintiff as follows: $30,534.00 against Harleysville; $10,000. against State Farm; $23,333.33 against N.J.M. These sums shall not be *181 subject to a lien asserted by National Union and procedurally, plaintiff's cross-motion against National Union is granted.
NOTES
[1] Although National Union was not named as a defendant in the declaratory judgment action, it filed a motion, without leave to intervene, for the purpose of asserting its workers' compensation lien and immediately filed a motion for summary judgment. In response, plaintiff filed a cross-motion for summary judgment and waived all arguments respecting jurisdiction or procedural deficiencies arising from National Union's intervention.
[2] Tucker failed to answer plaintiff's complaint, default was entered, and plaintiff was awarded a judgment of $618,942.50, plus pre-judgment interest after a proof hearing on April 16, 1991, pursuant to R. 4:43-2(b).
[3] N.J.M. fails to explain why it shouldn't contribute $23,333.33 by virtue of its 23.3 percent ratio computation.
[4] This court presumes Cuevas was a resident relative of his uncle's residence. The cited opinion fails to disclose the exact basis of his right to recover under his uncle's insurance policy.
[5] The court resolved this problem by removing the only claimant entitled to recover from two policies of insurance from its mathematical analysis. As to Cuevas, he was entitled to recover up to $15,000. from his uncle's policy and entitled to share in $30,000 as a per accident claimant under the Perez policy. The court divided the $30,000. per accident fund among all of the claimants other than Cuevas. These claims totalled $28,500. The balance of $1,500. was available to partially satisfy Cuevas' arbitration award of $12,000. The court satisfied that award by awarding Cuevas $10,500. from the second policy which sum was within the per person limitation of said policy.
[6] This court would, but for Charnecky v. American Reliance Ins. 249 N.J. Super. 91, 592 A.2d 17 (App.Div. 1991) rely upon the reasoning in Laureno v. N.J. Transit Bus., 220 N.J. Super. 295, 531 A.2d 1361 (App.Div. 1987) and would create an equitable right of reimbursement for the compensation carrier analogous to the statutory lien set forth in N.J.S.A. 34:15-40(c), as was done in Midland, supra, which looked to N.J.S.A. 34:15-40(b) in creating an equitable lien.
[7] The court was not advised of the uninsured motorist coverage, the claim asserted by plaintiff, the arbitration award, or the plaintiff's limited recovery due to multiple claims and single limit coverage.