693 A.2d 174

PAUL RANSOM, PLAINTIFF–APPELLANT, v. CIGNA INSURANCE COMPANY, STATE FARM INSURANCE COMPANY, THE PMA GROUP, ELIZABETH SOLOMON, KEYSTONE INSURANCE COMPANY, JOHN D. MASSIE, ADMINISTRATOR OF THE ESTATE OF THE LATE SUSAN MASSIE, THE ESTATE OF SUSAN MASSIE, ALLSTATE INSURANCE COMPANY, MARKET

---

TRANSITION FACILITY OF NEW JERSEY, SERVICED BY POLICY MANAGEMENT CORPORATION, MARTIN CASSETT, ROYAL INSURANCE COMPANY, JOHN DOE, MARY DOE, ABC PARTNERSHIPS AND XYZ CORPORATIONS, DEFENDANTS–RESPONDENTS. AND ELIZABETH SOLOMON, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued April 30, 1997—Decided May 15, 1997.

Before Judges SHEBELL, PAUL G. LEVY and BRAITHWAITE.

*Paul R. D'Amato* argued the cause for appellant, Paul Ransom (*Paul R. D'Amato, P.C.*, attorney; *Mr. D'Amato*, on the brief).

*Michael J. Mackler* argued the cause for appellant, Elizabeth Solomon (*Goldenberg, Mackler & Sayegh*, attorneys; *Mr. Mackler*, on the brief).

*Joseph T. Walsh* argued the cause for respondent, State Farm Insurance Company (*Chierici, Chierici & Smith*, attorneys; *Donald R. Chierici, Jr.*, on the brief).

*Faith S. Steinberg* argued the cause for respondent, The PMA Group (*Law Offices of Moira J. Poper*, attorney; *Mary C. Brennan*, on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

On June 1, 1992, Paul Ransom, Elizabeth Solomon, Martin Cassett, and the late Susan Massie were occupants of an ambulance owned by ProMedical Ambulance Service, Inc. ("ProMedical"). Ransom, Solomon and Massie were all employees of ProMedical, and Cassett was being transported by the ambulance service to a hospital in Philadelphia. The ambulance was travelling westbound on the Atlantic City Expressway when an unidentified vehicle cut in front of it, causing it to leave the road and overturn several times. Massie was killed and Ransom, Solomon and Cassett suffered serious injuries. The ambulance was insured by Cigna Insurance Company ("Cigna") for $350,000 single limit uninsured motorist ("UM") coverage. Ransom had UM coverage in the amount of $100,000 under a policy issued by State Farm Insurance Company ("State Farm") and Solomon had UM coverage in the amount of $50,000 under a policy issued to her by Keystone Insurance Company ("Keystone").

On September 22, 1993, plaintiff, Paul Ransom, filed this action in the Law Division seeking a declaratory judgment that "[t]he PMA Group does not have a lien pursuant to the Workers' Compensation Statutes ... against any proceeds ... [of] his claim against the [$350,000] uninsured motorist coverage of Cigna and State Farm Insurance Companies," and also seeking a determination of the maximum available UM coverage for Paul Ransom, Elizabeth Solomon and the Estate of Susan Massie.

The Complaint named numerous indispensable parties as defendants, including the other victims and various insurance companies. Defendant, Elizabeth Solomon, answered the Complaint and demanded "[j]udgment as to the amount of [un]insured benefits available, the parties responsible for payment of the uninsured benefits and their proportionate shares and an equitable division of the available proceeds to the injured claimants...." Defendant insurance carriers filed appropriate answers and cross-claims. On June 21, 1995 a Management Order was entered dismissing the Declaratory Judgment action with prejudice as against Cigna, because it offered the limits of its UM coverage to the injured parties. The order also set arbitration dates for the various claims.

In October 1995, the Decision and Award of Arbitrators was filed. The arbitration panel's determination of "the full value of each matter" was as follows: Ransom $97,663.51; Solomon $1,367,000; Estate of Massie $776,766; and Cassett $301,366.71. The total of the awards was $2,542,796.22. The panel also determined that "[t]o the extent that the Awards exceed available coverage, it is the decision of the Arbitrators that there is no Workers' Compensation Lien based upon the current case law[.]"

Solomon and Ransom filed separate motions for confirmation of the arbitration award and termination of the Workers' Compensation liens. Solomon asked the court to establish payments from Keystone only for a pro-rata portion of the coverage, the sum of

$43,750.[1]  Ransom, however, sought from State Farm the difference between the amount of his arbitration award and the portion of Cigna's policy to which he was entitled, which amounts to the sum of $84,183.63.

Oral argument on the motions was heard on December 21, 1995. PMA did not appear, but filed a Motion for Reconsideration on January 24, 1996.  An Order was entered on April 15, 1996 confirming the arbitration decision and distributing the Cigna policy as follows: Ransom $13,479.88;  Solomon $187,712.25;  Estate of Massie $107,212.11;  and Cassett $41,595.76.  The judge ordered that Ransom was to receive only $21,703 as his pro-rata share of the State Farm policy and Solomon was to receive $43,750 as her pro-rata share of the Keystone policy.  Although the judge had originally ruled that the Workers' Compensation liens of PMA were to be terminated, that decision was reversed after the Motion for Reconsideration was made by PMA.

Separate appeals were filed by Solomon and Ransom, which we consolidated.  Ransom and Solomon filed a joint brief and appendix, and PMA and State Farm each filed separate briefs.  Market Transition Facility, Cassett, Allstate Insurance Company, Cigna, and Royal Insurance Company notified the court that they would not be participating in the within appeal.  Keystone and the Estate of Massie have not participated in this appeal.

## I

■  Appellants contend that the trial court misinterpreted *N.J.S.A.* 17:28-1.1c and erred in finding that recovery under their personal automobile insurance policies must be pro-rated.  The statute, intended to prohibit insureds from stacking multiple policies which provide UM coverage to them, reads as follows:

Uninsured and underinsured motorist coverage provided for in this section shall not be increased by stacking the limits of coverage of multiple motor vehicles

---

[1] Nonetheless, in her brief on appeal, filed jointly with Ransom, Solomon appears to be asking to receive the full $50,000 under the Keystone policy.

covered under the same policy of insurance nor shall these coverages be increased by stacking the limits of coverage of multiple policies available to the insured. *If the insured had uninsured motorist coverage available under more than one policy, any recovery shall not exceed the higher of the applicable limits of the respective coverages and the recovery shall be prorated between the applicable coverages as the limits of each coverage bear to the total of the limits.*

[*N.J.S.A.* 17:28–1.1c (emphasis added).]

Here, the Cigna policy affords the highest UM coverage, and therefore, the maximum recovery limit under the statute is $350,-000. Appellants do not contend they are entitled to recover more than $350,000 or, in Ransom's case, more than the amount awarded to him by the arbitrators. Rather, they seek to recover the limits of their personal policies to the extent that their total individual recovery would remain under the maximum limit of $350,000 or the arbitration award, whichever is lower.

As was noted in *Schaser v. State Farm Ins. Co.*, there is very little case law on this issue. 255 *N.J.Super.* 169, 171, 604 *A.*2d 687 (Law Div.1992), *aff'd o.b.*, 267 *N.J.Super.* 510, 631 *A.*2d 1283 (App.Div.1993). Only a few cases have interpreted *N.J.S.A.* 17:28–1.1c. *See Schaser, supra; Rox v. Allstate Ins. Co.*, 250 *N.J.Super.* 536, 595 *A.*2d 563 (Law Div.1991); and *Cuevas v. Allstate Ins. Co.*, 234 *N.J.Super.* 461, 464, 560 *A.*2d 1317 (Law Div.1988).

In *Cuevas, supra*, the driver of an automobile and four passengers were injured in an accident caused by a hit and run driver. 234 *N.J.Super.* at 462, 560 *A.*2d 1317. The policy insuring the driver's vehicle provided UM coverage in the amount of $15,000 per person/$30,000 per accident and was issued by Allstate Insurance Company ("Allstate"). *Ibid.* Cuevas also had insurance with Allstate which provided UM coverage in the same amount. *Ibid.* Arbitrators awarded the five injured parties a total of $40,500, of which Cuevas was awarded $12,000. *Ibid.* Allstate then took the position that it was only responsible to pay $36,000 under both policies pursuant to the pro-rata scheme of *N.J.S.A.* 17:28–1.1c. *Ibid.*

The Law Division judge found that Allstate was responsible to pay out to the five injured parties the full $40,500 under the two policies issued to the driver and Cuevas. *Id.* at 465, 560 *A.*2d 1317. The judge stated:

[t]he provisions of *N.J.S.A.* 17:28–1.1c are clearly applicable to the traditional stacking situation and not to the facts in this case where the plaintiffs' arbitration awards fall within the applicable coverage limits of each available U.M. policy.

It is the holding of this court that the prorating of U.M. policies pursuant to *N.J.S.A.* 17:28–1.1c is not to be utilized to cause multiple claimants to recover less than their full arbitration awards where, as here, a *pro tanto* application will afford full recovery to the individual claimants which is *within* the applicable limits of coverage afforded by any one available policy.

[*Ibid.*]

Therefore, the judge concluded Cuevas was entitled to receive $1,500 from the driver's policy (the remainder after the other four plaintiffs' claims were satisfied from that policy) and $10,500 from his personal UM coverage. *Ibid.* This permitted Cuevas to recover the remainder of his award from his own UM coverage, rather than only a pro-rata share.

The application of *N.J.S.A.* 17:28–1.1c was also considered in *Rox, supra,* where plaintiffs, detectives employed by Newark, were injured in an accident with a hit and run driver. 250 *N.J.Super.* at 538, 595 *A.*2d 563. They each had personal insurance policies providing UM coverage, and Newark provided UM coverage in the amount of $15,000 per person/$30,000 per accident. *Id.* at 538–39, 595 *A.*2d 563. Newark contended its coverage was excess over the coverage provided to plaintiffs by their personal insurance carriers. *Id.* at 539, 595 *A.*2d 563.

The court stated that, pursuant to *N.J.S.A.* 17:28–1.1c, Newark was responsible for "a concurrent and *pro-rata* share of any award rendered in favor of the plaintiffs up to the total amount of $15,000 each, with its *pro-rata* share being the percentage which its applicable coverage of $15,000 bears to the total of all applicable coverages available to each of the plaintiffs." *Id.* at 543, 595 *A.*2d 563. However, the amount of the awards in *Rox* had not yet been determined, and therefore, no determination of the amount of total coverage Newark was responsible to provide was made.

In *Schaser, supra,* the driver and passenger of the vehicle were injured in an accident with an uninsured motorist. 255 *N.J.Super.* at 171, 604 *A.*2d 687. The vehicle in which Schaser was riding had single limit UM coverage of $100,000, issued by Harleysville Insurance Company ("Harleysville"). *Ibid.* Schaser was covered by a personal policy issued by State Farm which provided $15,000 in UM coverage. *Ibid.* Schaser was also covered by her father's policy issued by New Jersey Manufacturers Insurance Company ("NJM"), as a resident of the household, which provided $35,000 in UM coverage. *Id.* at 172, 604 *A.*2d 687.

Arbitrators awarded $400,000 to Schaser and $910,000 to the driver. *Ibid.* Schaser and the driver agreed to divide the $100,000 in UM coverage from the Harleysville policy in pro-rata shares based upon the arbitration awards. *Ibid.* Thus, Schaser received $30,534 from the Harleysville policy. *Id.* at 172–73, 604 *A.*2d 687. Schaser conceded she could not recover more than $100,000 by virtue of *N.J.S.A.* 17:28–1.1c, however, she argued she was entitled to $15,000 from State Farm and $35,000 from NJM, as her recovery would still not exceed the $100,000 limit. *Id.* at 173, 604 *A.*2d 687.

The judge held Schaser was only entitled to pro-rata shares of the State Farm and NJM policies. *Id.* at 177, 604 *A.*2d 687. He explained his decision as follows:

> Although the legislative mandate fails to specifically address the situation posed by the instant case where a single policy must be divided among multiple claimants, whose individual claims exceed the available coverage, nonetheless, the statute as enacted does create an unambiguous formula for the payment of uninsured motorist coverage, irrespective of the number of claimants or the number of insurance policies providing coverage.
>
> . . . .
>
> It is clear that by giving effect to the plain language of the statute which is written in the conjunctive, a clear and discernible limit of recovery and insurance carrier contribution is established. Plaintiff's approach requires insurance carriers providing uninsured motorist coverage, such as State Farm or N.J.M., to await the result of the Harleysville arbitration to determine their respective contributions. Such an

approach contradicts the clear statutory mandate and should not be sanctioned by this court.

[*Id.* at 177, 604 *A*.2d 687.]

We affirmed the Law Division judge's rejection of Schaser's contention. We now re-examine that conclusion. Neither the statute nor the legislative history explicitly addresses the issue before us. Appellants' position does not offend the spirit of the statute, which is to prevent an insured from recovering more than he/she is entitled to recover. However, strict application of the plain language of *N.J.S.A.* 17:28–1.1c would result in appellants being unable to recover the UM coverage their insurance companies agreed to provide.

The purpose of uninsured motorist coverage is " 'to provide greater protection for the victims of the uninsured motorists[.]' " *Riccio v. Prudential Property & Cas. Ins. Co.,* 108 *N.J.* 493, 499, 531 *A*.2d 717 (1987)(quoting *Gorton v. Reliance Ins. Co.,* 77 *N.J.* 563, 571, 391 *A*.2d 1219 (1978)). Moreover, *N.J.S.A.* 17:28–1.1 is to be "construed liberally to effectuate the broadest range of protection to such automobile accident victims consistent with its language." *Gorton v. Reliance Ins. Co.,* 137 *N.J.Super.* 558, 563, 350 *A*.2d 77 (App.Div.1975), *rev'd on other grounds,* 77 *N.J.* 563, 391 *A*.2d 1219 (1978). The goals of *N.J.S.A.* 17:28–1.1c are to prevent an insured from obtaining UM benefits beyond the maximum limits of the highest applicable coverage through stacking, and to require all companies providing applicable UM coverage to a claimant to contribute to the award. The statutory formula works toward these goals without further detriment to the claimant only where one claimant is involved.

However, the problem arises when multiple claimants must share in the larger policy limits, resulting in the claimant receiving so little a share of that policy, that even when combined with the pro-rata shares of the other policies, it is not possible to recover either the highest policy limit or, as with Ransom, the full arbitration award. We fail to see any legislative purpose or intent to prevent an injured claimant in these circumstances from recovering beyond the pro-rata share, but within the policy limits bar-

gained for, so long as the arbitrators' award or the coverage limit of the largest policy is not exceeded. Requiring such payment does not result in stacking, which the Legislature intended to prohibit, as the recovery may not in any event exceed the limits of the highest available coverage. The additional legislative goal of sharing the risk among all available carriers is also accomplished. By its very nature, pro-rata sharing under the statute utilizes all available policies. All that is changed under our approach is that the injustice to the injured party, that results from an unreasonable application of the formula, is corrected.

■■■ Each claimant is limited under *N.J.S.A.* 17:28–1.1c to the $350,000 limitation established by the Cigna coverage. If Solomon was the only injured party, she could recover the $350,000 statutory limit, through the combination of a pro-rata share of the Cigna policy and her personal policy, and if Ransom were the only injured party, he could recover the full amount of his arbitration award in the same manner. Here, however, if the statute is applied literally the number of claimants prevents both Ransom and Solomon from recovering their policy limits even though their awards are not fully paid and they have not reached the limit of the highest policy. We conclude that this result was not intended by the Legislature and is inequitable. Our decision will not violate the statutory maximum set forth in *N.J.S.A.* 17:28–1.1c, as neither Ransom nor Solomon will receive more than $350,000. Since *N.J.S.A.* 17:28–1.1c is silent on the issue of multiple claimants, and this is the more equitable and just solution while remaining consistent with the remedial purposes of UM coverage, we reverse the trial court. We find that Solomon is entitled to $50,000.00, the full amount of UM coverage from Keystone, as her recovery would still be less than both her arbitration award and the maximum recovery allowed by statute. We further find that Ransom is entitled to recover from State Farm $84,183.63, which will then afford him the full amount awarded to him by the arbitrators.

## II

■ Appellants urge that the judge erred in imposing a Workers' Compensation lien on plaintiffs' recovery. They do not deny that a Workers' Compensation lien may be made against UM recovery, but contend that a lien is improper in this case, as they have not had "full recovery," citing *Charnecky v. American Reliance Ins.*, 249 *N.J.Super.* 91, 592 *A.*2d 17 (App.Div.1991), *aff'd*, 127 *N.J.* 188, 603 *A.*2d 512 (1992). However, *Charnecky* was expressly overruled in *Frazier v. New Jersey Mfrs. Ins.*, 142 *N.J.* 590, 605, 667 *A.*2d 670 (1995). Appellants argue that to apply *Frazier* retroactively would be unjust, as they have relied upon the rule set forth in *Charnecky* to their detriment. Nonetheless, we find this argument to be without sufficient merit to warrant further discussion. *R.* 2:11–3(e)(1)(E). Moreover, under our holding, it will only be Solomon who has not had "full recovery." The holding in *Frazier* was itself applied retroactively, and as noted by the Court in *Frazier, supra,* "[g]enerally, judicial decisions are applied retroactively to all civil matters that have not reached final judgment." 142 *N.J.* at 606, 667 *A.*2d 670 (citations omitted).

We reverse the portion of the April 15, 1996 order limiting Ransom and Solomon to pro-rata shares of their UM provisions, the limitation will be only in accordance with the views expressed herein. We affirm the portion of the order allowing PMA to assert a Workers' Compensation lien against Ransom and Solomon's UM recovery.

Affirmed in part and reversed and remanded in part.