847 A.2d 578

SELECTIVE INSURANCE COMPANY OF AMERICA, PLAINTIFF-RESPONDENT, v. CHARLES THOMAS AND MARGARET CURRY, DEFENDANTS, AND DEBRA THOMAS, DEFENDANT-APPELLANT, AND OHIO CASUALTY INSURANCE COMPANY, DEFENDANT-RESPONDENT.

Argued January 6, 2004—Decided May 13, 2004.

*Allen J. Littlefield* argued the cause for appellant (*Kotlikoff, Littlefield & Fishman,* attorneys).

*George A. Prutting, Jr.,* argued the cause for respondent Ohio Casualty Insurance Company (*Prutting & Lombardi,* attorneys; *Joseph T. Walsh,* on the brief).

*Daniel J. Pomeroy* argued the cause for respondent Selective Insurance Company of America (*Mortenson and Pomeroy,* attorneys).

PER CURIAM.

This case arose when Charles Thomas, driving a 1992 Dodge van, was involved in an accident with a vehicle driven by Doris

Bruner. Charles, his wife Debra, his mother-in-law, and three of Bruner's passengers were injured. Bruner's insurer settled all six claims for $16,666.66 per person, exhausting its liability limits.

The Thomas van was insured by Ohio Casualty under a policy with split-limit uninsured/underinsured motorist(UM/UIM) coverage of $250,000 per person and $500,000 per accident. Additionally, the Thomases held a Selective business auto insurance policy on a different van that provided UM/UIM coverage with a combined single limit (CSL) of $500,000.

Charles and Debra (collectively the Thomases) made claims for UIM coverage under both policies. Selective sought a declaratory judgment regarding the limits available individually and collectively to the Thomases, and the manner in which UIM coverage should be allocated between it and Ohio. Ohio filed a cross-claim seeking a declaration that UIM coverage for the Thomases was to be pro-rated between it and Selective and that the Thomases were limited collectively to a $500,000 recovery.

The trial court declined to limit the Thomases' collective recovery to $500,000 and entered an order to the effect that: (1) the total amount of UIM coverage available to Charles under the Selective Policy was $483,333.34 ($500,000 minus a credit of $16,666.66 for the amount paid from Bruner's policy); (2) UIM coverage for Charles was to be prorated between Selective (sixty-six and two-thirds percent) and Ohio (thirty-three and one-third percent); (3) the total amount of UIM coverage available to Debra under Ohio's policy was $233,333.34 ($250,000 minus a credit of $16,666.66 for the amount paid from Bruner's policy); and (4) Debra was not entitled to UIM coverage under the Selective policy because she was not a named insured under that policy.

Ohio appealed, arguing, among other things, that the trial court erred in ruling that Debra was not a named insured[1] under

---

[1] *N.J.S.A.* 39:6A–2g defines named insured "as the person or persons identified as the insured in the policy and, if an individual, his or her spouse, if the spouse is named as a resident of the same household . . ."

Selective's policy and that the statutory anti-stacking language of *N.J.S.A.* 17:28–1.1c limited the Thomases' UIM coverage from both policies collectively to $500,000, minus any payment received from Bruner's policy.

Prior to oral argument, Ohio and Selective agreed that Debra *was* a named insured under Selective's policy. The two insurers also agreed that any UIM coverage available to Debra would be prorated between them. Hence, the only issue outstanding on appeal was whether the statutory anti-stacking provision limited the amount the Thomases could receive.

The Appellate Division answered that question in the affirmative. After reviewing the statute and the relevant language in the Ohio and Selective policies, the court held that under *N.J.S.A.* 17:28–1.1, because Ohio's policy contained split UM/UIM coverage limits of $250,000/$500,000 and Selective's policy had a CSL of $500,000, "coverage for both [the Thomases was] ... limited to a total of $500,000." We granted Debra's petition for certification (*Selective Ins. Co. of America v. Thomas*, 177 *N.J.* 575, 832 *A.*2d 325 (2003)), and now reverse.

## I

■ *N.J.S.A.* 17:28–1.1 provides that no motor vehicle policy or renewal insuring against loss for bodily injury or death sustained by "any person" shall issue unless it provides, among other things, for UM and UIM coverage. The statute defines UIM coverage as:

[I]nsurance for damages because of bodily injury and property damage resulting from an accident arising out of the ownership, maintenance or use of an underinsured motor vehicle....

[*N.J.S.A.* 17:28–1.1e(1).]

An "underinsured" vehicle is described by comparing the victim's available UIM coverage to the liability coverage of the tortfeasor:

A motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damages liability bonds and insurance policies available to a person against whom recovery is sought ... is ... less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insur-

ance policy *held by the person* seeking that recovery. A motor vehicle shall not be considered an underinsured motor vehicle under this section unless the limits of all bodily injury liability insurance or bonds applicable at the time of the accident have been exhausted by payment of settlements or judgments. The limits of underinsured motorist coverage available to *an injured person* shall be reduced by the amount he has recovered under all bodily injury liability insurance or bonds;

[*Ibid.* (emphasis added).]

UIM is meant to serve a limited purpose. It is not

intended to provide coverage to compensate injured parties for the full value of the injuries caused by the tortfeasors. The clear Legislative intent is that UIM should serve as a "gapfiller." *Bauter v. Hanover Ins. Co.,* 247 *N.J.Super.* 94, 96, 588 *A.*2d 870 (App.Div.), *certif. denied,* 126 *N.J.* 335, 598 *A.*2d 893 (1991). The principle of UIM coverage is not to make the injured party whole, but to put that person in as good a position as if the tortfeasor possessed an amount of liability insurance equal to the UIM coverage of an "insured" under the policy in question. *Calabrese v. Selective Ins. Co.,* 297 *N.J.Super.* 423, 431, 688 *A.*2d 606 (App.Div.1997), *overruled on other grounds, Magnifico v. Rutgers Cas. Ins. Co.,* 153 *N.J.* 406, 416, 710 *A.*2d 412 (1998). *See also Gambino v. State Farm Ins. Co., supra,* 348 *N.J.Super.* at 207–08, 791 *A.*2d 1044.

[*Vassiliu v. Daimler Chrysler Corp.,* 356 *N.J.Super.* 447, 456, 813 *A.*2d 547 (2002) (internal quotation omitted), *aff'd in part and rev'd in part,* 178 *N.J.* 286, 839 *A.*2d 863 (2004).]

■  At issue here is the anti-stacking provision of the UIM statute. Stacking occurs "where the same claimant and the same loss are covered under multiple policies, or under multiple coverages contained in a single policy, and the amount available under one policy is inadequate to satisfy the damages alleged or awarded." 12 Lee Russ Thomas F. Segalla, *Couch on Insurance,* 169:4 (3d ed.1998). Stacking of UM and UIM coverage is prohibited by *N.J.S.A.* 17:28–1.1c which prescribes:

c. Uninsured and underinsured motorist coverage provided for in this section shall not be increased by stacking the limits of coverage of multiple motor vehicles covered under the same policy of insurance nor shall these coverages be increased by stacking the limits of coverage of multiple policies available to the insured. If the insured had uninsured motorist coverage available under more than one policy, any recovery shall not exceed the higher of the applicable limits, any recovery shall not exceed the higher of the applicable limits of the respective coverages and the recovery shall be prorated between the applicable coverages as the limits of each coverage bear to the total of the limits.[2]

---

[2] Only the first sentence is applicable in the UIM setting.

A classic example of the operation of the statute was presented in *Magnifico v. Rutgers Cas. Ins. Co.*, 153 *N.J.* 406, 710 *A.*2d 412 (1998). Magnifico sought UIM coverage after being injured in an auto accident as a passenger in a friends car. The hosts CSC policy had a UIM limit of $250,000 and Magnifico's personal policy issued by Rutgers provided $100,000 of UIM coverage. Both limits exceeded the liability limit of the tortfeasors policy. Rutgers contended that, under our prior jurisprudence (*Aubrey v. Harleysville Ins. Cos.*, 140 *N.J.* 397, 658 *A.*2d 1246 (1995)), Magnifico could only recover the limit of her personal policy. The Appellate Division agreed. We reversed, explaining that *Aubrey* had been misinterpreted to restrict UIM claimants to the limits of their personal policies when, in fact, any policy held by a claimant is in the mix.

■ With respect to Magnifico's claim of entitlement to aggregation of both policies, we made the following observations:

> The cases construing the anti-stacking amendment primarily have concerned *uninsured* motorist coverage, and have focused on the extent to which personal policies providing that coverage may be required to supplement an insured's recovery under the host automobile's UM coverage if the aggregate recovery is less than the maximum coverage under any available policy. *See Ransom v. Cigna Ins. Co.*, 300 *N.J.Super.* 444, 449–54, 693 *A.*2d 174 (App.Div.1997); *Schaser v. State Farm Ins. Co.*, 255 *N.J.Super.* 169, 173–77, 604 *A.*2d 687 (Law Div.1992), *aff'd o.b.*, 267 *N.J.Super.* 510, 631 *A.*2d 1283 (App.Div.1993); *Cuevas v. Allstate Ins. Co.*, 234 *N.J.Super.* 461, 464–65, 560 *A.*2d 1317 (Law Div.1988). We entertain no doubt, however, that the first sentence of the anti-stacking amendment unambiguously resolves the issue of the availability of Magnifico's Rutgers UIM coverage. The statute states clearly that underinsured motorist coverage ... shall not be increased ... by stacking the limits of coverage of multiple policies available to the insured, *N.J.S.A.* 17:28–1.1c, and recognizes no exception if one of the multiple policies available to the insured provides excess rather than primary coverage. In our view, the clear and unmistakable purpose of the anti-stacking amendment's provisions relating to UIM coverage is to limit a claimant's UIM recovery to the highest coverage limit available under any one of the policies available to that claimant, irrespective of whether any available policy is primary or excess.
>
> [*Magnifico, supra,* 153 *N.J.* at 421, 710 *A.*2d 412.]

*See also Granger v. Ohio Cas. Ins. Co.*, 306 *N.J.Super.* 469, 474, 703 *A.*2d 1004 (App.Div.1997) (applying anti-stacking statute to prohibit claimant from seeking limits of two UIM policies, noting [t]o hold otherwise would be to render the anti-stacking statute

meaningless ...). In short, an insured cannot aggregate the limits of multiple UIM policies.

■ This case presents a different issue from *Magnifico* and *Granger*. The question is whether a husband and wife, injured in the same accident, and both named insureds under the same multiple policies, are limited by the anti-stacking statute to *collectively* recovering the highest single limit of all applicable UIM policies. In answering that question, the insurers essentially argue that the term "the insured" in the anti-stacking statute is intended to incorporate both a husband and wife and restricts them collectively to the higher policy limit.

## II

The first inquiry is whether there is something in the UIM statute itself that would suggest such an outcome. As is obvious, that statute is cast entirely in individual terms. Thus, for example, it is the UIM insurance held by *"the* person" that is compared to the tortfeasor's liability limits to assess whether a vehicle is underinsured. *N.J.S.A.* 17:28–1.1e(1). Likewise, it is *"the* insured" whose policies cannot be stacked, *N.J.S.A.* 17:28–1.1c. "Common usage in the English language does not scrupulously observe a difference between singular and plural word forms." 2A Norman J. Singer, *Sutherland Statutory Construction* § 47.34, at 374 (6th ed.2000). Nevertheless, where singular and plural word forms are used, generally "discrete applications are favored *except* where a contrary intent or reasonable understanding is affirmatively indicated." *Id.* at 376 (emphasis added).

In terms of an expression of contrary intent, it is certainly arguable that the Legislature's differential use of the terms "the person" and "the insured" in the UIM statute indicates a recognition that "the insured" *could* include more than one person. However, that does not answer the question presented. There is a vast difference between a legislative authorization and a legislative mandate. To say that legislation does not prohibit the insurer's view is quite different from saying that it is the source of

that interpretation. In other words, if there is a reason to lump the Thomases together as "the insured," it does not come from the statute itself.

The only other possibility is the policy language. The Ohio policy states:

"Insured" as used in this endorsement means:

1. You or any "family member."

2. Any other person "occupying" "your covered auto."

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

The Selective policy states:

B. Who is an insured

1. You.

2. If you are an individual, any "family member."

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

Both go on to distinguish between the "named insured" and "the insured" by limiting what they will pay to a non-named insured covered by another policy with a lower liability limit. The question is whether there is something in that language to support the insurers' view that, although their claims and losses are distinct, the Thomases are one "insured" for UIM limits.

The insurers argue that the Appellate Division correctly interpreted related language in the Selective policy, capping its liability for any one accident regardless of the number of injured persons, as limiting the Thomases to a total recovery of $500,000. Selective's policy language does operate to limit the Thomases' combined recovery *from Selective;* however it cannot be read to dictate each person's total recovery from *all* policies after application of the anti-stacking statute to determine each person's available limit.

The insurers' further claim that the pro-rata language in the policies serves as an overall cap on the amount recoverable by two

injured insureds is equally unavailing. The gist of that argument is that each insurer agreed only to pay its "share" (the proportion that its limit of liability bears to all limits) of the $500,000 cap. That is correct but it in no way answers the issue of the collective amount recoverable by the Thomases from both policies. Indeed, the pro-rata provisions can be given full effect under the Thomases' interpretation.

During oral argument, the insurers appeared to contend that their interpretation of "the insured" is based on underwriting considerations. Put another way, because the Thomases purchased their UIM insurance as a "family unit," the insurers treated them collectively as "the insured" for underwriting purposes. It is hard to imagine why a "family unit" would purchase more than one UIM policy if the insurers' interpretation is the correct one. But even if we were to credit that view, its only effect would be to cast a pall of uncertainty over the policy language. The insurers could obtain no comfort therefrom because the ambiguity would require resolution in favor of the insureds. *Shaw v. City of Jersey City*, 174 *N.J.* 567, 577–78, 811 *A.*2d 404 (2002) (members of public who purchase insurance entitled to broad protection and fulfillment of reasonable expectations and to extent "accident" was ambiguous construing UM policy to provide coverage satisfied insured's reasonable expectations); *Progressive Ins. Co. v. Hurley*, 166 *N.J.* 260, 273, 765 *A.*2d 195 (2001) (when contract language is ambiguous court should apply interpretation that favors coverage); *Sparks v. St. Paul Ins. Co.*, 100 *N.J.* 325, 335–36, 495 *A.*2d 406 (1985) (insurance contracts are contracts of adhesion and difficult to understand, and ambiguities should be resolved in favor of insured so as to meet reasonable expectations).

In sum, the insurers have advanced no argument to support the conclusion that the Thomases together are "the insured" under the anti-stacking statute. Therefore, each is entitled to the $500,000 CSL in the Selective policy, subject to any other relevant policy limitations.

## III

The judgment of the Appellate Division is reversed. The case is remanded to the trial court for reconsideration of its order in light of the principles to which we have adverted.

*For reversal and remandment*—Chief Justice PORITZ, and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, and WALLACE—6.

*Opposed*—None.