658 A.2d 1246

THERESA AUBREY, PLAINTIFF–RESPONDENT, v. THE
HARLEYSVILLE INSURANCE COMPANIES,
DEFENDANT–APPELLANT.

Argued January 31, 1995—Decided June 8, 1995.

*J. Robert McGroarty* argued the cause for appellant.

*Robert A. Porter* argued the cause for respondent (*Friedman, Bafundo & Porter,* attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

The issue is whether plaintiff, Theresa Aubrey, a purchaser under contract of an automobile from Chris Koch Toyota (Koch), is covered under the underinsured motorist (UIM) provisions of a garage policy issued to Koch by defendant, The Harleysville Insurance Companies (Harleysville), for injuries Aubrey sustained while operating a loaned automobile with Koch's permission. The Law Division granted Harleysville's motion for summary judgment, finding that "the step-down" clause in the liability section of the Harleysville policy denied coverage to Aubrey. The Appellate Division reversed, holding that Aubrey was covered under the UIM provision of the Harleysville policy and that the step-down clause did not apply. 274 *N.J.Super.* 237, 643 *A.*2d 1043 (1994). We granted Harleysville's petition for certification, 138 *N.J.* 266, 649 *A.*2d 1286 (1994). We reverse the judgment of the Appellate Division and reinstate that of the Law Division.

I

On January 5, 1991, Aubrey signed a contract with Koch to purchase a new 1991 Toyota Tercel. As part of the agreement, Aubrey traded in her 1989 Hyundai. Koch retained title to the Toyota, but gave Aubrey permission to drive it pending approval of her application for a car loan.

Aubrey was insured under an automobile liability policy issued by the Policy Management Corporation Insurance Company

(PMC). The PMC policy provided UIM limits of $15,000 and liability limits of $15,000 for injury to one person and $30,000 for injuries to more than one person.

Aubrey's loan application was rejected on January 9, 1991, but Koch told her to "keep using the car" while it tried to find another lender. On January 11, 1991, while driving the Tercel, Aubrey sustained serious personal injuries in a three-car accident. The insurers for the other drivers settled Aubrey's claim by paying their policy limits, $25,000 and $15,000, respectively, or a total of $40,000.

*N.J.S.A.* 17:28–1e states in part that a motor vehicle is underinsured when the "sum of the limits of liability ... available to a person against whom recovery is sought ... is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery." The $40,000 that Aubrey received from the insurance carriers of the other drivers exceeded her $15,000 UIM limits. Hence, she was not "underinsured" under *N.J.S.A.* 17:28–1e and could not recover UIM benefits under her own policy. Her damages, however, exceeded $40,000. Consequently, Aubrey sought recovery under the UIM provisions of the Harleysville policy, which insured Koch for $1,000,000 in liability and UIM coverage.

In a letter to Aubrey's lawyers, Harleysville denied coverage:

> It is the position of this company that UIM coverage is personal to the claimant and the tortfeasor's coverage is measured against the UIM coverage which the claimant has purchased in the policy held by the claimant personally. Since in this case, [the tortfeasor's] policy was $25,000.00 and your client's UM/UIM coverage was $15,000.00, it follows that the [tortfeasor] was not underinsured as that term is defined in the New Jersey Statute.

Section 11(a) of the Harleysville policy, dealing with liability coverage, generally excludes car-dealership customers from coverage. The "step-down" clause in subsection 11(a)(2)(d), however, provides liability coverage for customers to the minimum required by law. It provides higher coverage limits for the Koch dealer-

ship and its employees, but reduces coverage for Koch's customers.

The liability section of the policy states in relevant part:

WHO IS AN INSURED

a.  The following are "insureds" for covered "autos:"

(1) You for any covered "auto."

(2) Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

\*      \*      \*      \*      \*      \*      \*      \*

(d) Your customers, if your business is shown in the Declarations as an "auto" dealership. However, if a customer of yours:

(i) Has no other available insurance (whether primary, excess or contingent), they are an "insured" but only up to the compulsory or financial responsibility law limits where the covered "auto" is principally garaged.

(ii) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered "auto" is principally garaged, they are an "insured" only for the amount by which the compulsory or financial responsibility law limits exceed the limit of their other insurance.

In contrast, the Harleysville UIM endorsement does not contain a "step-down" clause. That endorsement defines "insured" to include any person "occupying a covered auto." The parity provision of *N.J.S.A.* 17:28–1.1b, however, states that an insured's UIM coverage "shall not exceed the insured's motor vehicle liability policy limits . . . ." Thus, the question arose whether Aubrey's right to recover, if any, would extend to the $1,000,000 limit of the UIM clause or would be limited, because of the parity provision and the step-down clause, to $15,000.

To resolve that question, Aubrey instituted an action in the Law Division seeking, in part, a determination that under the Harleysville UIM clause she was a "covered person." Harleysville filed a cross-motion seeking dismissal.

The Law Division granted Harleysville's cross-motion, stating that the step-down clause in the liability section of the Harleysville policy limited Aubrey's UIM claim "to the amount of insurance required by the state wherein the vehicle is garaged or operated, the minimum amount which is 15/30 in New Jersey."

In reversing, the Appellate Division held that the UIM clause, not the liability clause, governed. 274 *N.J.Super.* at 241, 643 *A.*2d 1043. It concluded that under the UIM endorsement Aubrey was entitled to recover up to $1,000,000.

The Appellate Division reasoned that the UIM endorsement explicitly states that "anyone ... occupying a covered auto" is insured. As the court stated, "[Harleysville] admitted that the Toyota was a 'covered auto.' Thus, [Aubrey] is an insured." *Id.* at 240, 643 *A.*2d 1043.

For two reasons, the court found that the step-down clause in the liability section did not apply. First, the court emphasized that the step-down clause is "contained solely in the liability provisions of the policy. It is neither repeated in the UIM endorsement nor cross-referenced thereto in anyway." *Id.* at 241, 643 *A.*2d 1043. The court noted that Harleysville could have limited its UIM exposure by including a step-down clause in the UIM endorsement; "it simply did not do so and the step-down clause in its liability provisions do not apply to [Aubrey]." *Id.* at 243, 643 *A.*2d 1043.

Second, the court held that even if the step-down clause could limit the UIM coverage, the limitation did not apply to Aubrey "on its face." *Id.* at 241, 643 *A.*2d 1043. According to the court, the step-down clause applied only to those customers who had no insurance or inadequate insurance. The court reasoned that Aubrey was insured and that her policy limits satisfied the statutory minimum. Thus, the step-down clause did not apply to her.

Lastly, the Appellate Division dismissed Harleysville's claim that UIM coverage is personal to the insured and that Aubrey could seek recovery only under her PMC policy. The court relied on two statutory provisions. First, it looked to *N.J.S.A.* 17:28–1.1b, which states that UIM coverage shall not "exceed the insured's motor vehicle policy limits for bodily injury and property damage." Second, it turned to *N.J.S.A.* 17:28–1.1e, which states that whether a vehicle is underinsured depends on determining the "applicable limits for underinsured motorist coverage afforded

under the motor vehicle insurance policy held by the person seeking that recovery." The court construed "held by the person" to include "policies pursuant to which the person is an insured, regardless of who may have purchased the policy." 274 *N.J.Super.* at 243, 643 *A.*2d 1043.

## II

Stated in full, the UIM statute, *N.J.S.A.* 17:28–1.1e, provides:

A motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery.

In effect, the statute states that the determination whether a vehicle is underinsured requires ascertaining whether the liability limits of the person "against whom recovery is sought" are "less than" the amount of UIM coverage "held by the person seeking that recovery."

Unlike the Appellate Division, we conclude that UIM coverage, which is limited to the amount contained in the insured's policy, is "personal" to the insured. Coverage is linked to the injured person, not the covered vehicle. *Fernandez v. Selected Risks Ins. Co.,* 82 *N.J.* 236, 241, 412 *A.*2d 755 (1980). UIM coverage provides "as much coverage as the insured is willing to purchase, for his or her protection subject only to the owner's policy liability limits for personal injury and property damages to others." *Prudential Property & Casualty Ins. Co. v. Travelers Ins. Co.,* 264 *N.J.Super.* 251, 259–60, 624 *A.*2d 600 (App.Div.1993); *see also Clegg v. New Jersey Automobile Full Underwriting Ass'n,* 254 *N.J.Super.* 634, 638, 604 *A.*2d 179 (App.Div.1992) (stating that UIM coverage is linked to insured); *Nikiper v. Motor Club of America Cos.,* 232 *N.J.Super.* 393, 399, 557 *A.*2d 332 (App.Div.) (stating that "[t]he purchase determines the amount of the coverage; the number of tortfeasors does not"), *certif. denied,* 117 *N.J.* 139, 564 *A.*2d 863 (1989).

■   Generally speaking, courts construe insurance policies consistent with the objectively reasonable expectations of the insured. *Werner Indus. v. First State Ins. Co.*, 112 *N.J.* 30, 35, 548 *A.*2d 188 (1988). Limiting UIM coverage to the amount chosen by the insured comports with the insured's reasonable expectations. Under *N.J.S.A.* 17:28–1.1b, UIM coverage is discretionary, not mandatory. The statute merely requires that UIM coverage "shall be provided as an option...." Consequently, a "purchaser would reasonably and objectively expect that he is buying such protection up to the declared limits primarily for himself and his resident spouse." *Clegg, supra,* 254 *N.J.Super.* at 640, 604 *A.*2d 179; *see also Prudential Ins. Co., supra,* 264 *N.J.Super.* at 260, 624 *A.*2d 600 (holding that purchaser of UIM coverage would reasonably expect such coverage to protect to declared limits and, thus, policies could not be prorated); 8C John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 5067.45 at 48 (1981) (Appleman) (stating that policy behind UIM insurance is to protect those insureds with foresight to protect themselves).

Here, Aubrey purchased UIM coverage in the amount of $15,-000. Thus, the amount of UIM coverage "held" by her, as "the person seeking recovery," was $15,000. Accordingly, she could reasonably expect UIM coverage in that amount. When she purchased her UIM coverage, Aubrey could not reasonably have anticipated the possibility of receiving benefits under UIM endorsements issued in favor of Koch. To allow her to recover under Koch's UIM policy would distort the meaning of an insured's "reasonable expectations."

Thus, we disagree with the Appellate Division's conclusion that UIM insurance is not personal to the insured. The Appellate Division construed the statutory phrase "held by the person seeking that recovery" to "include policies pursuant to which the person is an insured, regardless of who may have purchased the policy." 274 *N.J.Super.* at 243, 643 *A.*2d 1043. To support its construction, the Appellate Division relied on *Landi v. Gray*, 228 *N.J.Super.* 619, 550 *A.*2d 768 (App.Div.1988).

In *Landi*, the plaintiff, Dawn Landi, was a passenger in a car owned by her brother and insured under a policy issued to him. Landi had her own liability policy with a limit of $15,000. She borrowed her brother's car and was injured when the car, while driven by a friend, went off the road. Landi's friend did not own an automobile and was not covered for automobile liability except under the brother's policy. The brother's insurer paid to Landi its policy limits. As a member of her mother's household, Landi then sought to recover under her mother's $1,000,000 policy. Her mother's insurer denied recovery based on an exclusion in its policy: "Neither 'uninsured motor vehicle' nor 'underinsured motor vehicle' includes any vehicle ... [o]wned by or furnished or available for the regular use of you or any family member."

The Appellate Division held that Landi could recover as an underinsured motorist under her mother's policy and was not limited by her own policy's $15,000 limit. The court wrote: "A motor vehicle may be underinsured when compared to the underinsured motorist coverage afforded under one policy, yet not be underinsured when compared to the underinsured motorist coverage of another." *Id.* at 624, 550 *A.*2d 768. We disagree with that statement and disapprove of the holding in *Landi*.

■ The right to recover UIM benefits depends on the UIM limits chosen by the insured. Recovery does not depend on the limits of other UIM policies, such as the mother's policy in *Landi* or Koch's policy in the instant case. *See Harden v. Monroe Guaranty Ins. Co.*, 626 *N.E.*2d 814, 818 (Ind.Ct.App.1993) (holding that prospective buyer of used car could not recover under dealer's UIM endorsement because UIM insurance is not for protection of vehicles, but of persons).

### III

■ We also disagree with the Appellate Division's construction of the step-down clause in the liability section of the Harleysville policy. Our analysis begins with *N.J.S.A.* 17:28–1.1b, which mandates parity between the underinsured motorist coverage and an

insured's motor vehicle liability policy limits. Aubrey's own policy provides for liability coverage of $15,000. Under the clear terms of the statute, her UIM coverage cannot exceed her liability coverage.

To determine whether Aubrey is "underinsured" under the Harleysville UIM endorsement, we turn to the Harleysville step-down clause, which defines an insured to include a customer who has liability insurance, but only for the "amount by which the compulsory or financial-responsibility law limits exceed the limit of [the customer's liability] insurance." Thus, the step-down clause limits liability coverage for a customer to the statutory minimum, $15,000. Under the parity provision of *N.J.S.A.* 17:28–1.1b, Aubrey's right to recover underinsured benefits would be limited to that amount. Aubrey's own policy, moreover, meets the statutory minimum by providing $15,000 of liability coverage. Consequently, the $15,000 statutory minimum does not "exceed" Aubrey's liability limits. Aubrey, therefore, is not covered under the liability section of the Harleysville policy. Her $40,000 recovery from the other drivers would exceed the $15,000 available to her under the Harleysville policy. In sum, Aubrey is not "underinsured" and is not entitled to recover under the Harleysville policy.

■ Aubrey also claims that Harleysville's blanket exclusion of customers (except for those with no or legally inadequate coverage) violates public policy. Relying on the absence of previous dealings with Koch, Aubrey claims she is not Koch's "customer." We disagree. Common sense compels the conclusion that the first-time purchaser of something as costly as a new car is the dealer's customer.

■ She also contends that the exclusion renders the liability section, including the step-down clause, invalid as a matter of law, and that she is entitled to the full liability coverage of $1,000,000. In making that contention, she relies on *Keystone Ins. Co. v. Atlantic Chrysler Plymouth, Inc.*, 167 *N.J.Super.* 353, 400 *A.2d* 872 (Law Div.1979). In *Keystone,* a customer was injured while test-driving an automobile. The dealer's policy provided $1,000,-

000 in liability coverage for garage owners and employees, but limited the coverage available to customers who had no or insufficient insurance. For such customers, the policy further limited the coverage to the statutory minimum. In invalidating the customer exclusion, the Law Division stated that "any restriction in omnibus coverage would contravene statutory policy, whether that restriction be one of scope or monetary limits." *Id.* at 361, 400 *A.*2d 872. Thus, the dealer's limitation of customer coverage to the statutory minimum was void.

*Rao v. Universal Underwriters Ins. Co.,* 228 *N.J.Super.* 396, 408 n.3, 549 *A.*2d 1259 (App.Div.1988), rejected *Keystone.* In *Rao,* Naveen Rao leased a car and, pursuant to the lease agreement, purchased liability insurance with $100,000/$300,000 limits. While Rao's wife was driving the leased car, she struck a pedestrian. The Raos filed suit, claiming they were entitled to coverage under the leasing company's policy. That policy provided liability for lessees, but only in the amount "needed to comply with the minimum limits provision of such law in the jurisdiction where the occurrence takes place." *Id.* at 399, 549 *A.*2d 1259. The Law Division declared the limitation on coverage invalid because it made coverage "contingent upon a lessee's failure to obtain their [sic] own coverage...." *Id.* at 403, 549 *A.*2d 1259. The Appellate Division reversed.

In sustaining the limitation, the Appellate Division distinguished between an exclusion from the class of covered permissive users and a limitation on the coverage. The invalidity of the exclusion, according to the court, did not affect the policy limits. As the court stated, "[t]he requirement of providing broad minimum coverage ... does not necessarily lead to the conclusion that the broadest full policy coverage is required where the insurer unsuccessfully attempts to limit its liability under an invalidated section of an otherwise acceptable escape clause." *Id.* at 405–06, 549 *A.*2d 1259. The court continued that if an illegal exclusion compelled an amendment to the policy, the policy "should be amended to the extent of the statutory limit, especially in cases such as this, where

the policy language explicitly limits the lessee's coverage to such a statutory minimum." *Id.* at 406, 549 *A.*2d 1259.

Consistent with *Rao*, Harleysville's policy, which merely limits coverage, is valid.

The judgment of the Appellate Division is reversed.

*For reversal*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.