710 A.2d 412

KATHLEEN MAGNIFICO AND CARL MAGNIFICO, PLAINTIFFS–APPELLANTS AND CROSS–RESPONDENTS, v. RUTGERS CASUALTY INSURANCE COMPANY, COMPUTER SCIENCE CORPORATION D/B/A CSC INSURANCE COMPANY AS SERVICING CARRIER FOR NEW JERSEY FULL UNDERWRITERS INSURANCE ASSOCIATION AND THE JOINT UNDERWRITERS ASSOCIATION, DEFENDANTS–RESPONDENTS AND CROSS–APPELLANTS.

Argued January 6, 1998—Decided May 12, 1998.

*Roy H. Mossi* argued the cause for appellants and cross-respondents (*Marcus & Levy*, attorneys).

*Robert J. Maloof* argued the cause for respondents and cross-appellants CSC Insurance Company as servicing carrier for New Jersey Full Underwriters Insurance Association and The Joint Underwriters Association (*Hein, Smith, Berezin, Maloof, Davidson & Jacobs*, attorneys; *Mr. Maloof* and *Carla H. Madnick*, on the briefs).

*Susan L. Moreinis* argued the cause for respondent and cross-appellant Rutgers Casualty Insurance Company.

The opinion of the Court was delivered by

STEIN, J.

This appeal, together with *New Jersey Manufacturers Insurance Co. v. Breen,* 153 *N.J.* 424, 710 *A.*2d 421 (1998), and *Grant v. Amica Mutual Insurance Co.,* 153 *N.J.* 433, 710 *A.*2d 426 (1998), also decided today, requires that we resolve issues of underinsured motorist (UIM) coverage under multiple insurance policies that were anticipated by our decision in *French v. New Jersey School Board Ass'n Insurance Group,* 149 *N.J.* 478, 694 *A.*2d 1008 (1997). Our acknowledgment in *French, id.* at 481, 694 *A.*2d 1008, that UIM insurance has been characterized as both a "sleeping giant," *Green v. Selective Ins. Co. of Am.,* 144 *N.J.* 344, 349, 676 *A.*2d 1074

(1996), and a "legal iceberg," Cynthia M. Craig & Daniel J. Pomeroy, *New Jersey Auto Insurance Law* § 26.1 at 355 (1998), provides a context for the issues to be addressed. Our objective is to reduce the complexity of UIM coverage issues to manageable proportions by clarifying and simplifying the applicable legal principles. In the process, we trust that over time the reasonable expectations of both the insurers that write that coverage and the insureds that purchase it generally can be fulfilled.

Kathleen Magnifico sought UIM coverage after being injured in an automobile accident while she was a passenger in a friend's car. The host's insurance policy had a UIM limit of $250,000. Magnifico's personal policy provided $100,000 of UIM coverage. Both UIM limits exceeded the liability limit carried by the tortfeasor. Magnifico seeks access to the sum of those two UIM policies. In an unpublished opinion, the Appellate Division held that the host policy provided primary UIM coverage and Magnifico's personal policy provided excess coverage, but that Magnifico's recovery of UIM benefits could not exceed the limit of coverage in her own policy, reduced by the amount of her recovery from the tortfeasor.

I

On October 19, 1990, Magnifico suffered serious spinal injuries in a car accident. Magnifico and her husband Carl were passengers in a car owned and driven by Grace DeNichilo. As DeNichilo made a left turn at a Weehawken intersection controlled by a traffic officer, Frank Cameron drove through the intersection, against the traffic officer's signal, and hit DeNichilo's car. Cameron was driving a car owned by Beverly Manning.

At the time of the accident, CSC Insurance Company (CSC), as servicing carrier for the New Jersey Full Underwriters Association and the Joint Underwriters Association, insured DeNichilo's car. That policy provided UIM coverage with a limit of $250,000. Magnifico's automobile policy was with Rutgers Casualty Insurance Company (Rutgers). The Rutgers policy provided UIM

coverage with a limit of $100,000. Manning's State Farm Policy had a liability limit of $25,000.

Magnifico settled with Manning for the $25,000 limit of Manning's liability policy. Magnifico then sought UIM benefits from both CSC and Rutgers.

Rutgers responded that its coverage, according to the "other insurance" provision in Magnifico's policy, would be excess to that of CSC. The Rutgers "other insurance" clause states:

> If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

DeNichilo's policy with CSC contained a nearly identical "other insurance" provision. CSC contended that the two carriers should therefore divide the payment of any arbitration award on a *pro rata* basis.

In August 1994, Magnifico filed a declaratory judgment action to determine the obligations of each insurer. Rutgers cross-claimed and counterclaimed for a declaration that its UIM coverage was excess. In April 1995, Magnifico moved for summary judgment declaring CSC to be the primary insurer and the Rutgers policy to be excess. Rutgers cross-moved for summary judgment. It agreed that the CSC policy was primary, but argued that the anti-stacking provision of *N.J.S.A.* 17:28–1.1c prevented Magnifico from collecting anything beyond the $250,000 available under the CSC policy.

Prior to oral argument on the summary judgment motions, and prior to this Court's decision in *Aubrey v. Harleysville Insurance Cos.*, 140 *N.J.* 397, 658 *A.2d* 1246 (1995), CSC stipulated that its policy was primary with respect to Magnifico's UIM claims. At oral argument the trial court acknowledged that stipulation and also denied Rutgers' cross-motion for summary judgment on its anti-stacking argument. Inadvertently, the Law Division judge never signed an order memorializing his rulings.

After this Court issued its decision in *Aubrey* Rutgers moved for reconsideration, asking the court to consider the effect of *Aubrey* and urging the court to revisit the anti-stacking question. Rutgers argued that, based on *Aubrey*, Magnifico was entitled to UIM recovery only up to the $100,000 UIM limit established by her personal policy. Further, Rutgers contended that Magnifico could recover the $100,000 only from CSC because *Aubrey* did not disturb the "other insurance" provisions that made CSC primary in Magnifico's case. Therefore, Rutgers argued, Magnifico could collect nothing under the Rutgers policy because the $100,000 limit she chose was less than the $250,000 cap on the CSC policy.

CSC also moved for reconsideration based on an alternative interpretation of *Aubrey*. CSC agreed with Rutgers' position that Magnifico should be limited to the $100,000 limit she chose, but it also read *Aubrey* to mean that Magnifico could collect only from Rutgers because that was the insurer she chose.

The trial court reiterated its rejection of Rutgers' anti-stacking argument, and rejected CSC's position that *Aubrey* restricted Magnifico to collecting from Rutgers. The court agreed with Rutgers that Magnifico was entitled only to $75,000 in UIM benefits (the $100,000 limit she chose, less the $25,000 she received from Manning's insurer). Because Magnifico was not entitled to more than the $250,000 limit on the CSC policy, the court also agreed that the Rutgers excess policy was not exposed.

On appeal, Magnifico argued that CSC should be bound to its stipulation that it was the primary carrier, and that the trial court incorrectly interpreted *Aubrey* and unduly limited her access to UIM coverage. CSC cross-appealed, arguing that the trial court incorrectly held CSC liable to Magnifico as the primary carrier. Rutgers conditionally cross-appealed on the anti-stacking issue: if the Appellate Division were to hold that Magnifico could collect more than $100,000, Rutgers sought reversal of the ruling that it was to provide excess coverage.

The Appellate Division rejected Magnifico's attempt to hold CSC to its stipulation, finding that CSC stipulated only that its

coverage was primary, not that the full $250,000 of UIM benefits would be available to Magnifico. The panel agreed with Rutgers' position that *Aubrey* prevented Magnifico from collecting anything more than the $100,000 UIM limit that she selected, reduced by the amount of her recovery from the tortfeasor. Rejecting CSC's contention, the panel held that Magnifico's recovery of UIM benefits would be from CSC rather than Rutgers, reasoning that our decision in *Aubrey* did not affect the rule that policy language should determine questions of priority between two applicable policies.

We granted Magnifico's petition for certification as well as the cross-petitions of CSC and Rutgers. 149 *N.J.* 407, 408, 694 *A.*2d 193 (1997).

## II

Magnifico's petition and the cross-petitions assert essentially the same positions advanced by the parties in the Appellate Division. The principal legal issues before us are the total amount of UIM coverage to which Magnifico is entitled, whether the anti-stacking provision of *N.J.S.A.* 17:28–1.1c limits that available coverage, and the respective liability of CSC and Rutgers for payment of Magnifico's UIM benefits. Relevant but distinctly collateral to those issues is Magnifico's contention that CSC is estopped from challenging its stipulation before the Law Division that its policy provides primary UIM coverage to Magnifico. Magnifico's other collateral argument is that the Law Division's May 25, 1995 rulings that the CSC policy was primary and that both the CSC and Rutgers policies must contribute to the payment of her UIM benefits were "final" rulings not subject to reconsideration or modification.

In view of our ultimate disposition affirming the Appellate Division's determination that the CSC policy is primary and the Rutgers policy excess, *infra* at 416–17, 710 *A.*2d at 417, we are satisfied that Magnifico's estoppel argument is moot and we decline to address it.

■ We are unpersuaded by Magnifico's contention that the Law Division's ruling on May 25, 1995, that Magnifico was entitled to UIM benefits from both insurers was a "final ruling" not subject to modification by the Law Division judge. We note that *Rule* 4:49–2 permits a party to move for reconsideration of an order if the reconsideration motion is served "no later than 10 days after service of the judgment or order upon all parties by the party obtaining it." Magnifico contends that the Law Division judge's failure to sign an order memorializing that ruling precludes reconsideration, but the comment to *Rule* 4:49–2 states: "It is, of course, only a signed order which triggers the running of the time period. The failure of entry of an order permits either party simply to renew the original application at any time if not otherwise time barred." Pressler, *Current N.J. Court Rules,* comment on *R.* 4:49–2 (1998). We are fully in accord with the Appellate Division's conclusion that the Law Division's ruling remained subject to reconsideration and modification. *See Hamm v. City of Clifton,* 229 *N.J.Super.* 423, 428, 551 *A.*2d 1019 (App.Div.1988).

### III

■ We first address CSC's contention that despite the unambiguous language of its policy providing UIM benefits to occupants of the DeNichilo vehicle, Magnifico nevertheless may recover UIM benefits only under her personal policy with Rutgers. In support of that contention CSC relies on *Frankel v. Motor Club of America Insurance Co.,* 298 *N.J.Super.* 250, 689 *A.*2d 728 (App. Div.1996), *Calabrese v. Selective Insurance Co. of America,* 297 *N.J.Super.* 423, 688 *A.*2d 606 (App.Div.1997), and *Aetna Casualty & Surety Co. v. Prudential Property & Casualty Insurance Co.,* 296 *N.J.Super.* 116, 686 *A.*2d 352 (App.Div.1996). In *Frankel, supra,* the plaintiff was a passenger in an automobile owned by Albert Di Battista and was injured in a collision with another vehicle. 298 *N.J.Super.* at 251, 689 *A.*2d 728. She settled her claim against the tortfeasor for the $15,000 limit of his liability policy, and sought UIM coverage both from her own carrier and

from Di Battista's carrier. *Ibid.* Her insurer, Motor Club of America Insurance Company (Motor Club), provided UIM coverage of $50,000 and Di Battista's carrier, Harleysville Insurance Company (Harleysville), provided $100,000 of UIM coverage. *Ibid.* The Law Division, applying its interpretation of *Aubrey,* concluded that Frankel could recover UIM benefits only from her own carrier. *Ibid.* Affirming the Law Division, the Appellate Division acknowledged that Frankel was an "occupant" of Di Battista's automobile and that under the literal wording of Di Battista's policy its coverage was primary. *Id.* at 251–52, 689 *A.*2d 728. Nevertheless, the Appellate Division concluded that *Aubrey* had the effect of limiting Frankel's recourse to UIM coverage only to her personal liability policy, requiring Motor Club but not Harleysville to provide her with coverage. *Id.* at 254, 689 *A.*2d 728.

In *Calabrese, supra,* Rosemary Rocchio was injured while operating her daughter Marianne's motor vehicle. 297 *N.J.Super.* at 427, 688 *A.*2d 606. After settling with the tortfeasor's carrier for the policy limits, Rocchio sought UIM benefits under both her own automobile policy as well as under the policy insuring her daughter's vehicle. *Id.* at 427–28, 688 *A.*2d 606. Her husband, who asserted a *per quod* claim, also sought recovery under both UIM policies. *Id.* at 433, 688 *A.*2d 606. Citing this Court's opinion in *Aubrey, supra,* the Appellate Division panel questioned whether *Aubrey* would permit the Rocchios to recover UIM benefits under their daughter's policy:

> While Mrs. Rocchio was, of course, occupying the vehicle of Marianne, and appears to be covered by the language of that policy, we question whether recovery under that policy is permitted under the holding of our Supreme Court in *Aubrey, supra,* 140 *N.J.* at 403–05 [658 *A.*2d 1246]. At the very least, *Aubrey* compels the conclusion that Rosemary and Anthony Rocchio's policy must be viewed as the primary coverage.
>
> [*Ibid.*]

In *Aetna, supra,* the UIM claimant was John Proffitt whose friend, an employee of One Stop Auto Center (One Stop), allowed Proffitt to drive a vehicle owned by One Stop in order to perform a personal favor for the employee. 296 *N.J.Super.* at 117–18, 686

*A*.2d 352. While driving the One Stop vehicle, Proffitt was injured in an accident with another vehicle whose insurer tendered the entire limits of its policy. *Id.* at 118, 686 *A*.2d 352. Proffitt then sought UIM coverage from both Aetna, One Stop's carrier, and Prudential Property and Casualty Company, Proffitt's own carrier. *Ibid.* The Appellate Division panel concluded that Proffitt could recover UIM benefits only from the Prudential policy, noting that his use of the One Stop vehicle was "fleeting in time and purely fortuitous," and that he was not a named insured under the Aetna policy. *Id.* at 122, 686 *A*.2d 352. Applying *Aubrey,* the panel held that "Proffitt's expectation of insurance coverage must be deemed to be limited to the UIM coverage that he purchased from Prudential." *Ibid.*

In *French, supra,* we explained that *Aubrey* has been incorrectly understood to limit claimants only to the UIM coverage provided by their personal automobile policies:

> [W]e note the problem that *Aubrey* has apparently been interpreted by some courts as establishing the UIM policy purchased by the injured person as not only the policy of "comparison" (for the purpose of gauging whether a UIM claim exists in the first place) but also as the only UIM policy that the injured person has resort to once that threshold test is met. That is simply too broad a reading. Indeed, other portions of the statute and the standard uninsured/underinsured motorist endorsement approved by the Commissioner of Insurance plainly envision one potentially being able to secure benefits under more than one UIM endorsement.
>
> [149 *N.J.* at 486, 694 *A*.2d 1008.]

We acknowledged in *French* that the statutory reference to "underinsured motorist coverage afforded under the motor vehicle insurance policy *held* by the person seeking that recovery" in *N.J.S.A.* 17:28–1.1e should be understood to "include a policy provided for the claimant by an employer even if coverage under the personal policy of the employee were not triggered." *Id.* at 489, 694 *A*.2d 1008. Moreover, we emphasized that once a claimant satisfies the threshold for UIM coverage

> the statute contemplates that the insured is free to pursue UIM benefits under other policies under which he or she may be insured—whether under his or her personal policy, as the occupant of an employer's vehicle, *the permissive occupant of a motor vehicle owned by any other insured person,* or as the resident in the

household of a relative possessing his or her own UIM insurance. Each of those UIM policies is opened up to the insured once the threshold test is met.

[149 *N.J.* at 495, 694 *A*.2d 1008 (emphasis added).]

Accordingly, we reject CSC's contention that Magnifico's UIM recovery is restricted to the coverage provided by her Rutgers policy. Consistent with *French*, the CSC policy, including its UIM coverage, that insured occupants of DeNichilo's automobile, was a policy "held" by Magnifico, a permissive occupant of DeNichilo's automobile, and was available to provide her with UIM coverage. *Frankel, supra,* 298 *N.J.Super.* at 254, 689 *A*.2d 728, and *Calabrese, supra,* 297 *N.J.Super.* at 433, 688 *A*.2d 606, are overruled to the extent that they are inconsistent with that conclusion.

■ In *French*, we also emphasized the significance of the clear language of applicable insurance policies in resolving cases of UIM coverage, 149 *N.J.* at 493–95, 694 *A*.2d 1008, and noted that "[p]olicy drafters have either anticipated or can anticipate most of the recurring problems in this area." *Id.* at 494, 694 *A*.2d 1008. The plain language of the Rutgers "other insurance" clause states, referring to Ms. Magnifico, that "any insurance we provide with respect to a vehicle *you* do not own shall be excess over any other collectible insurance." (Emphasis added.) Applying the clear policy language, the Appellate Division correctly concluded that the CSC policy provides primary coverage and the Rutgers policy excess coverage. Former Presiding Judge Michels aptly articulated the rationale for that holding in *Royal Insurance Co. v. Rutgers Casualty Insurance Co.*, 271 *N.J.Super.* 409, 419–20, 638 *A*.2d 924 (App.Div.1994):

[W]e recognize that underinsured motorist coverage has been characterized by some courts as being "personal to an insured".... However, this characterization of underinsured motorist coverage cannot overcome the clear and unambiguous language of a policy and render the policy's "excess" clause void and unenforceable. It is fundamental that in the absence of a statutory prohibition to the contrary, an insurance company has a right to impose whatever conditions it desires prior to assuming its obligations, including providing whether its policy shall be primary to or excess over other collectible insurance, and how it will contribute with such other insurance. Such qualifying provisions should be construed in a common sense and logical fashion in accordance with the language used. Thus, while the Rutgers underinsured motorist coverage may be characterized as "personal"

coverage, it was not the primary coverage under the circumstances of this case. Ms. Davidson was operating a non-owned automobile and therefore, by a straightforward application of the terms of the policies, the Rutgers policy was excess over the primary coverage provided by the Royal policy.

[Citations omitted.]

Reference to the plain and unambiguous language of the CSC policy also leads us to conclude that the Appellate Division improperly limited Magnifico's UIM coverage to the $100,000 limit in her Rutgers policy rather than the $250,000 limit available under the CSC policy. As we observed in *French, supra,* "no public policy or statute prevents an insurance company from providing greater coverage to an uninsured person than is provided under the personal insurance of that insured." 149 *N.J.* at 492, 694 *A.*2d 1008. We note that an offer of the availability of UM/UIM coverage, which may for some covered persons exceed the coverage available under their personal policies, is required to be included in the New Jersey Auto Insurance Buyers Guide (Guide), the content of which is prescribed by the Commissioner of Insurance pursuant to *N.J.S.A.* 39:6A–23. The Guide's description of Uninsured/Underinsured Motorist Coverage reads as follows:

### Uninsured/Underinsured Motorist Coverage
### (Required by Law)

Despite New Jersey law, which requires auto insurance, many cars are not covered by insurance. Some motorists break the law. Many other motorists are residents of other states which do not require auto insurance by law.

Because these motorists can cause accidents, you are required to buy uninsured motorist coverage. This coverage does not benefit the uninsured driver. It will provide benefits to you, *your passengers or relatives living with you if a motorist without insurance is legally liable for injuries to these persons* or for damage to your car or its contents.

There are other motorists who have auto insurance coverage but with very low limits. When you buy uninsured motorist coverage above the minimum limits required by law, you are also provided coverage to protect you from those motorists who are underinsured. If you are in an accident caused by such a motorist, underinsured motorist coverage will pay damages up to the difference between your underinsured motorist coverage limit and the other driver's liability coverage limit.

[*N.J.A.C.* 11:3–15.6(*o*) (emphasis added).]

Although the reference to coverage benefitting "your passengers or relatives living with you" is contained in a paragraph describing uninsured motorist coverage, a reasonable interpretation of the Guide would suggest that those categories of beneficiaries were also to receive the benefit of UIM coverage purchased by the insured.

The CSC policy insuring DeNichilo's automobile, for which DeNichilo paid premiums, provided $250,000 in UIM coverage and that coverage expressly applied to passengers such as Magnifico. Presumably, when CSC calculated the applicable premium it took into account the relatively high UIM limit the policy provided and that the UIM coverage also was available to authorized occupants of the vehicle. That Magnifico purchased only $100,000 of UIM coverage under her personal policy does not affect her right to recover the higher limit of UIM coverage to which she was expressly entitled under the CSC policy. That conclusion is reinforced by *French*'s reinterpretation of the statutory phrase "the policy held by the person seeking ... recovery" to refer to "the UIM policy actually purchased by or purchased for the benefit of the prospective UIM claimant." *French, supra,* 149 *N.J.* at 485, 694 *A.*2d 1008.

■ We also observe, as we did in *French, supra,* 149 *N.J.* at 494, 694 *A.*2d 1008, that insurers can modify policy language in an effort to address issues of UIM coverage and liability. The standard form of the 1996 insurance agreement on file with the Department of Insurance provides that if an insured is not a named insured under the policy in question but is a named insured under her own policy, then the limit of liability under the subject policy will not exceed the highest applicable limit of liability coverage under the named insured's policy. If included in the CSC policy, that language apparently would limit Magnifico's recovery under that policy to the amount of UIM coverage provided by the Rutgers policy.

■ We next address Magnifico's contention that because her damages exceed the available UIM coverage under the CSC

policy, she also is entitled to recover any additional damages from her personal policy issued by Rutgers. In framing the issue, Magnifico asserts that no question of policy "stacking" is implicated because the "other insurance" provision of the Rutgers policy establishes that that policy provides only excess coverage over CSC's primary coverage. Magnifico's argument implies that the anti-stacking provision of *N.J.S.A.* 17:28–1.1c does not preclude an insured from obtaining increased coverage by resorting to an available excess policy if the primary policy coverage is inadequate. We note that claimants in out-of-state cases have unsuccessfully advanced essentially the same contention in an effort to avoid the application of anti-stacking language contained in the UIM coverage provisions of automobile liability policies. *See Hammer v. State Farm Mut. Auto. Ins. Co.*, 950 *F.Supp.* 192, 194–95 (W.D.Ky.1996); *Federated Am. Ins. Co. v. Erickson*, 67 *Wash.App.* 670, 838 *P.2d* 693, 694–95 (1992); *Doyle v. State Farm Ins. Co.*, 61 *Wash.App.* 640, 811 *P.2d* 968, 970–71, *review denied*, 118 *Wash.*2d 1005, 822 *P.2d* 288 (1991).

Analytically, Magnifico's contention is not inconsistent with the reasoning underlying this Court's invalidation of an uninsured motorist "excess-escape" clause in *Motor Club of America Insurance Co. v. Phillips*, 66 *N.J.* 277, 330 *A.2d* 360 (1974). There, the claimant sustained injuries as a passenger in a vehicle that collided with an uninsured automobile. *Id.* at 280, 330 *A.2d* 360. After collecting the $10,000 policy limit under the host vehicle's uninsured motorist endorsement, he sought access to the $10,000 uninsured motorist coverage under his personal policy issued by Motor Club of America Insurance Company (Motor Club). *Id.* at 281, 330 *A.2d* 360. The Motor Club policy contained a standard "excess-escape" clause:

> With respect to bodily injury to an insured while occupying a highway vehicle not owned by the named insured, this insurance shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such vehicle as primary insurance and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.
>
> [*Id.* at 281, 330 *A.2d* 360 (footnote omitted).]

Because the UM coverage under the Motor Club and the host vehicle policies were identical, the "excess-escape" clause barred recovery under the Motor Club policy. *Ibid.* We invalidated the excess-escape clause on the ground that it was inconsistent with the legislative mandate that required every automobile insurance policy to provide coverage for payment of damages for bodily injuries sustained in an accident caused by uninsured motorists, noting that the Legislature had not seen fit to limit to only one policy the recourse of an injured claimant for whom UM coverage was available from more than one policy. *Id.* at 292, 330 *A.*2d 360. We also noted that enforcement of the "excess-escape" clause would eliminate the availability of UM coverage paid for by the insured merely because equivalent coverage was also available from another policy. *Id.* at 292–93, 330 *A.*2d 360.

Nevertheless, apparently in response to *Motor Club* and *Lundy v. Aetna Casualty & Surety Co.*, 92 *N.J.* 550, 560, 458 *A.*2d 106 (1983), in which we held that an insured under a single automobile policy covering several vehicles can recover under *each* car's UM coverage, the Legislature amended *N.J.S.A.* 17:28–1.1, *L.* 1983, *c.* 362, to add a specific anti-stacking provision applicable to both UM and UIM coverage:

> c. Uninsured and underinsured motorist coverage provided for in this section shall not be increased by stacking the limits of coverage of multiple motor vehicles covered under the same policy of insurance nor shall these coverages be increased by stacking the limits of coverage of multiple policies available to the insured. If the insured had uninsured motorist coverage available under more than one policy, any recovery shall not exceed the higher of the applicable limits of the respective coverages and the recovery shall be prorated between the applicable coverages as the limits of each coverage bear to the total of the limits.[1]

Our case law generally has acknowledged that "the 'anti-stacking' amendment to *N.J.S.A.* 17:28–1.1 effectively overruled *Motor Club.*" *French, supra,* 149 *N.J.* at 491, 694 *A.*2d 1008; *Christy v.*

---

[1] We note that in *French* we inaccurately characterized *N.J.S.A.* 17:28–1.1c as requiring proration of applicable coverages in cases where a claimant has more than one policy available to him or her. *149 N.J.* at 495, 694 A.2d 1008. That provision mandates proration only when multiple *UM* coverages are available to the claimant.

*City of Newark*, 102 *N.J.* 598, 611, 510 *A.*2d 22 (1986); *Mondelli v. State Farm Mut. Auto. Ins. Co.*, 102 *N.J.* 167, 173, 506 *A.*2d 728 (1986).

■ The cases construing the anti-stacking amendment primarily have concerned *uninsured* motorist coverage, and have focused on the extent to which personal policies providing that coverage may be required to supplement an insured's recovery under the host automobile's UM coverage if the aggregate recovery is less than the maximum coverage under any available policy. See *Ransom v. Cigna Ins. Co.*, 300 *N.J.Super.* 444, 449–54, 693 *A.*2d 174 (App.Div.1997); *Schaser v. State Farm Ins. Co.*, 255 *N.J.Super.* 169, 173–77, 604 *A.*2d 687 (Law Div.1992), *aff'd o.b.*, 267 *N.J.Super.* 510, 631 *A.*2d 1283 (App.Div.1993); *Cuevas v. Allstate Ins. Co.*, 234 *N.J.Super.* 461, 464–65, 560 *A.*2d 1317 (Law Div. 1988). We entertain no doubt, however, that the first sentence of the anti-stacking amendment unambiguously resolves the issue of the availability of Magnifico's Rutgers UIM coverage. The statute states clearly that "underinsured motorist coverage ... shall not be increased ... by stacking the limits of coverage of multiple policies available to the insured," *N.J.S.A.* 17:28–1.1c, and recognizes no exception if one of the multiple policies available to the insured provides excess rather than primary coverage. In our view, the clear and unmistakable purpose of the anti-stacking amendment's provisions relating to UIM coverage is to limit a claimant's UIM recovery to the highest coverage limit available under any one of the policies available to that claimant, irrespective of whether any available policy is primary or excess.

Although Magnifico contends that that interpretation of the anti-stacking amendment renders worthless her Rutgers UIM coverage for purposes of this occurrence, we note that in various other circumstances her personal UIM coverage could provide substantial benefits. For example, if the host car's UIM coverage had been $50,000 rather than $250,000, Magnifico's recovery under the host policy would have been $25,000 ($50,000 less the $25,000 recovered from the tortfeasor's insurer), and her Rutgers policy

would be required to pay the remaining $50,000. Similarly, if the host car's UIM coverage were less than the tortfeasor's liability coverage, the host car's policy would provide no UIM benefit; the Rutgers policy would be primary, not excess, and would pay the $100,000 policy limit less the $25,000 paid by the tortfeasor's insurer. Those examples demonstrate that the unavailability of Magnifico's personal UIM coverage in this circumstance, because of the plain language of the anti-stacking amendment, does not imply that that coverage would be unavailable under different conditions.

Our conclusion that the anti-stacking amendment bars Magnifico's access to recovery under the UIM coverage afforded by her Rutgers policy is consistent with the Appellate Division's recent decision in *Granger v. Ohio Casualty Insurance Co.*, 306 *N.J.Super.* 469, 703 *A.*2d 1004 (1997). In *Granger,* the plaintiff was driving an automobile owned by his employer and sustained injuries in a collision caused by another vehicle. *Id.* at 472, 703 *A.*2d 1004. The plaintiff settled his claim with the tortfeasor who carried $20,000 in liability coverage. *Ibid.* He then sought UIM coverage from his employer's carrier, Ohio Casualty Insurance Company (Ohio), which provided $500,000 in UIM coverage, as well as from Liberty Mutual Insurance Group (Liberty), his personal carrier under a policy that provided $100,000 in UIM coverage. Arbitrators awarded the plaintiff $600,000 in damages, but did not determine the allocation of responsibility between Ohio and Liberty. *Ibid.* The "other insurance" clause in the Liberty policy was identical to the "other insurance" clause in Magnifico's Rutgers policy, providing that the Liberty policy was "excess" if the injury occurred in a vehicle not owned by the plaintiff. Reversing the trial court's determination that the plaintiff could have access to both policies, the Appellate Division held that under the anti-stacking amendment the plaintiff's recovery could not "exceed the amount of the highest UIM coverage available to him." *Id.* at 474, 703 *A.*2d 1004. The court added that "[t]o hold otherwise would be to render the anti-stacking provision meaningless in these circumstances." *Ibid.*

We note that the language of the "other insurance" clause in Magnifico's personal policy could more precisely incorporate the express provisions of the anti-stacking statute to emphasize the unavailability of that policy when a host automobile's higher UIM policy limit has provided benefits to the insured that exceed the UIM limits under her personal policy. Finally, in view of our determination that the Rutgers policy provides only excess coverage, and that plaintiff's UIM recovery is limited to the $250,000 in coverage provided by the CSC policy reduced by the recovery from the tortfeasor's insurer, Rutgers has no liability either to Magnifico or to CSC. *See Royal Ins. Co., supra,* 271 *N.J.Super.* at 416–20, 638 *A.*2d 924.

## IV

We modify the judgment of the Appellate Division to recognize the availability to Magnifico of the $250,000 of UIM coverage provided by the CSC policy, reduced by the $25,000 recovery from the tortfeasor's insurer. As modified, we affirm the judgment of the Appellate Division.

*For modification and affirmance*—Chief Justice PORITZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.