710 A.2d 421

NEW JERSEY MANUFACTURERS INSURANCE COMPANY,
PLAINTIFF–APPELLANT, v. RUTH BREEN,
DEFENDANT–RESPONDENT.

Argued January 6, 1998—Decided May 12, 1998.

*Brian G. Steller,* argued the cause for appellant (*Connell, Foley & Geiser,* attorneys; *Thomas A. Sparno,* on the briefs).

*Marc C. Saperstein,* argued the cause for respondent (*Davis, Saperstein & Salomon,* attorneys).

*Gerald H. Baker,* argued the cause for *amicus curiae,* The Association of Trial Lawyers–New Jersey (*E. Drew Britcher,* attorney; *Tommie Ann Gibney,* on the brief).

The opinion of the Court was delivered by

STEIN, J.

This appeal, together with *Magnifico v. Rutgers Casualty Insurance Co.,* 153 *N.J.* 406, 710 *A.*2d 412 (1998), and *Grant v. Amica Mutual Insurance Co.,* 153 *N.J.* 433, 710 *A.*2d 426 (1998), also decided today, involves questions of underinsured motorist (UIM) coverage not specifically resolved by our decision in *French v. New Jersey School Board Ass'n Insurance Group,* 149 *N.J.* 478, 694 *A.*2d 1008 (1997). The primary issue concerns the right of a family member of named insureds under a business auto policy, who was injured in an auto accident while operating her own vehicle, to receive the benefit of UIM coverage included in the business auto policy that would not have been available pursuant to the family member's personal policy. A secondary issue is whether our decision in *Aubrey v. Harleysville Insurance Cos.,* 140 *N.J.* 397, 658 *A.*2d 1246 (1995), should be applied only prospectively.

The claimant in this case, Ruth Breen, sought UIM benefits under a policy issued by New Jersey Manufacturers Insurance Company (NJM) to a business owned by Breen's parents. Breen claimed benefits under the business policy because the UIM limit on her personal policy was lower than the liability limit on the tortfeasor's policy and the business policy's UIM limit was higher than the liability limit on the tortfeasor's policy.

I

On February 7, 1991, while driving her own car, Breen was seriously injured in a car accident caused by Loni Shulman.

Breen's car was insured by Liberty Mutual Insurance Company (Liberty) and that policy provided UIM coverage up to $50,000. Shulman's Allstate policy had a liability limit of $100,000. Accordingly, Shulman's car was not underinsured with respect to Breen's personal policy. See *N.J.S.A.* 17:28-1.1e.

Breen lived with her parents, Sally and Walter Pilcer, who ran an unincorporated family business, Cardinell Products (Cardinell). Cardinell had a "Business Auto Policy" with NJM that had a $500,000 UIM limit. Breen and her mother certified that Breen was a Cardinell employee, and that they had informed NJM annually that Breen operated company vehicles and should be insured under the policy. NJM contested Breen's status as an employee or as a person identified in the policy as an operator of the business vehicles. The vehicles covered by the NJM policy included a 1989 Honda and 1988 Mazda leased to Cardinell Products by Breen's mother. The uninsured (UM) and UIM coverage under the NJM policy expressly applied to family members of the named insureds. The named insureds included Cardinell Products and Mr. and Mrs. Pilcer.

After settling with Shulman for $95,000, Breen claimed UIM benefits under Cardinell's NJM policy and asked to arbitrate the amount of damages. Before arbitration commenced, NJM offered to settle for $300,000. Breen rejected the offer. The arbitrators heard testimony in May 1995 and suspended the proceedings to allow the parties to submit medical reports.

On June 8, 1995, this Court issued its decision in *Aubrey v. Harleysville Insurance Cos.,* 140 *N.J.* 397, 658 *A.*2d 1246 (1995). In July 1995, NJM filed a declaratory judgment action seeking a stay of the arbitration and an order barring Breen from collecting under Cardinell's policy because it was not "personal" to her. In September 1995, the Law Division ordered arbitration to proceed. The arbitrators entered a $325,000 award in favor of Breen in October 1995. In March 1996, the Law Division, citing *Aubrey,* determined that Breen was not entitled to UIM benefits under the Cardinell policy.

The Appellate Division reversed, concluding that although *Aubrey* barred Breen's access to the Cardinell UIM policy *Aubrey* should have prospective effect only. *New Jersey Mfrs. Ins. Co. v. Breen,* 297 *N.J.Super.* 503, 514–15, 688 *A.*2d 647 (App.Div.1997). During oral argument before the Appellate Division, NJM conceded that it would have recognized Breen as an insured if *Aubrey* had not overruled *Landi v. Gray,* 228 *N.J.Super.* 619, 550 *A.*2d 768 (App.Div.1988), because its policy stated that Breen's parents, and not merely Cardinell, were named insureds. *Breen, supra,* 297 *N.J.Super.* at 506, 688 *A.*2d 647. The Appellate Division agreed with that understanding of the policy, stating that "[o]nly human beings are entitled to compensation under an underinsured motorist clause." *Ibid.* Because NJM presumably collected premiums for the UIM coverage, the court observed that the parties reasonably expected that the policy would be interpreted as though Breen's parents were named insureds, with the result that Breen would receive coverage as a family member of named insureds. *Id.* at 506–07, 688 *A.*2d 647 (citing *Werner Indus. v. First State Ins. Co.,* 112 *N.J.* 30, 35, 548 *A.*2d 188 (1988)). Acknowledging that the undisputed facts in *Breen* were analogous to the facts in *Landi,* the court noted that, prior to *Aubrey,* Breen would have been entitled to UIM benefits from Cardinell's policy. *Breen, supra,* 297 *N.J.Super.* at 511, 688 *A.*2d 647. However, the court determined that because *Aubrey* overruled *Landi* Breen was not entitled to UIM coverage under the Cardinell policy. *Ibid.*

The court observed that *Aubrey,* by overruling *Landi,* "effected a substantial change in the law." *Ibid.* It noted that prior to *Aubrey* the UIM form prescribed by the Department of Insurance indicated that accident victims could recover under policies purchased by other family members living in the same household, and that family members were entitled to rely on that language in planning their insurance purchases. *Id.* at 512, 688 *A.*2d 647. "[T]he insurance companies undoubtedly calculated and collected premiums" based on the understanding that their policies covered people other than the named insureds. *Ibid.* The court determined to limit *Aubrey* to prospective effect because "buyers and

sellers of automobile insurance should have a reasonable opportunity to react to the *Aubrey* decision," and because State regulators and legislators might also appreciate the chance to adjust to the change. *Id.* at 513, 688 *A.*2d 647.

The court concluded that the conditions necessary for prospective application of *Aubrey* were met: *Aubrey* overruled past precedent on which parties may have relied; giving *Aubrey* prospective effect would further, not detract from, the new rule; and giving *Aubrey* retrospective effect would threaten to impose substantial hardship. *Id.* at 513–14, 688 *A.*2d 647 (citing *Coons v. American Honda Motor Co.,* 96 *N.J.* 419, 476 *A.*2d 763 (1984), *cert. denied,* 469 *U.S.* 1123, 105 *S.Ct.* 808, 83 *L. Ed.*2d 800 (1985)). We granted NJM's petition for certification. 149 *N.J.* 408, 694 *A.*2d 194 (1997).

II

Preliminarily, we note that our decision in *French* explained with more specificity the vulnerability of the *Landi* decision that *Aubrey* overruled. In *Landi, supra,* 228 *N.J.Super.* at 620–21, 550 *A.*2d 768, the plaintiff was seriously injured when a friend driving her brother's vehicle, in which she was a passenger, caused the vehicle to collide with a tree when it veered off the road. The plaintiff collected $15,000 from the liability portion of her brother's policy that insured the driver as a permissive user. *Id.* at 621, 550 *A.*2d 768. The plaintiff's personal auto policy afforded her UIM coverage of $15,000 and with respect to that policy her brother's vehicle was not underinsured. *Id.* at 623, 550 *A.*2d 768. However, as a resident of her mother's household, she sought the $100,000 UIM coverage available under her mother's automobile policy. *Id.* at 621, 550 *A.*2d 768. That policy contained the following exclusion: "Neither 'uninsured motor vehicle' nor 'underinsured motor vehicle' includes any vehicle ... [o]wned by or furnished or available for the regular use of you or any family member." *Ibid.* Thus, the policy by its terms did not provide UM or UIM coverage if the vehicle driven by the tortfeasor belonged to a family

member. The trial court invalidated the exclusion as contrary to public policy. *Ibid.* The Appellate Division affirmed, concluding that as a matter of public policy insurers are not permitted to restrict the scope of UIM coverage by excluding vehicles owned by family members from the definition of underinsured vehicles. *Id.* at 622–23, 550 *A.*2d 768.

Although *Aubrey*'s disapproval of *Landi* could be interpreted to rest on the use of the plaintiff's mother's policy rather than her own as the standard for determining eligibility for UIM coverage, we explained in *French* that the critical analytical flaw in *Landi* was its invalidation of the exclusion. *French, supra,* 149 *N.J.* at 490–92, 694 *A.*2d 1008. We held that "no public policy or statute prevents the exclusion of UIM coverage when it is the underinsured vehicle of the resident family member that causes the injury." *Id.* at 492, 694 *A.*2d 1008. In the same context, however, we observed in *French* that "no public policy or statute should prevent a parent from providing UIM coverage for a resident-child greater than the child might have on a personal auto so long as the risk is understood and accepted by the insurance company." We also noted the likelihood that a parent would bear the burden of a child's unreimbursed medical expenses. *Ibid.* Accordingly, as amplified by *French,* our disapproval of *Landi* should be understood to refer only to the *Landi* court's invalidation of the exclusion of UIM coverage when an underinsured vehicle of a resident family member caused the claimant's injury. 228 *N.J.Super.* at 622, 550 *A.*2d 768.

### III

In *Magnifico, supra,* 153 *N.J.* at 415, 710 *A.*2d at 416, we reiterated our observation in *French* that *Aubrey* had been misunderstood by some courts to restrict claimants seeking UIM coverage only to the coverage provided by their personal policies:

[W]e note the problem that *Aubrey* has apparently been interpreted by some courts as establishing the UIM policy purchased by the injured person as not only

the policy of "comparison" (for the purpose of gauging whether a UIM claim exists in the first place) but also as the only UIM policy that the injured person has resort to once that threshold test is met. That is simply too broad a reading. Indeed, other portions of the statute and the standard uninsured/ underinsured motorist endorsement approved by the Commissioner of Insurance plainly envision one potentially being able to secure benefits under more than one UIM endorsement.

[<em>French, supra,</em> 149 <em>N.J.</em> at 486, 694 <em>A.</em>2d 1008.]

We also noted in *French* that a policy "held" by the claimant for purposes of satisfying the statutory standard that determines whether a tortfeasor's vehicle is underinsured need not necessarily be the policy purchased by the claimant. *Id.* at 487, 694 *A.*2d 1008. *See also Tyler v. New Jersey Auto. Full Ins. Underwriting Ass'n,* 228 *N.J.Super.* 463, 466, 550 *A.*2d 168 (App.Div.1988) (noting that a tortfeasor is underinsured "relative to the limits of the underinsured motorist coverage *purchased by or for* the person seeking recovery") (emphasis added). We also emphasized in *French* that once a claimant satisfies the threshold for UIM coverage

the statute contemplates that the insured is free to pursue UIM benefits under other policies under which he or she may be insured—whether under his or her personal policy, as the occupant of an employer's vehicle, the permissive occupant of a motor vehicle owned by any other insured person, *or as the resident in the household of a relative possessing his or her own UIM insurance.* Each of those UIM policies is opened up to the insured once the threshold test is met.

[149 <em>N.J.</em> at 495, 694 <em>A.</em>2d 1008 (emphasis added).]

In *Magnifico, supra,* 153 *N.J.* at 417, 710 *A.*2d at 417, we also noted that the portion of the New Jersey Auto Insurance Buyers Guide (Guide), the content of which is prescribed by regulation, *N.J.A.C.* 11:3–15.6, states that the coverage provides benefits to "you [the insured], your passengers or relatives living with you if a motorist without insurance is legally liable for injuries to these persons. . . ." We noted that the reference to coverage providing benefits to "your passengers or relatives living with you" is included in a paragraph describing *UM* coverage, but we concluded that the Guide necessarily should be understood as indicating that those categories of beneficiaries also would benefit from UIM coverage purchased by the insured. *Magnifico, supra,* 153 *N.J.* at 417–419, 710 *A.*2d at 417–418.

In *French,* we left no room for doubt that the critical factor in UIM coverage litigation is the policy language, and stressed that the ultimate result in *Aubrey, Landi,* and *French* itself was dictated by the literal language of the policy:

> In *Aubrey,* the plain language of the step-down provisions of the dealer's policy limited the available liability coverage and consequently the UIM coverage to the same amount as Aubrey's policy. Aubrey "held" no UIM coverage greater than the limits of liability held by the negligent operator. In *Landi,* the plain language of her mother's policy limited the UIM coverage available to Dawn when the operation of another family car caused her injuries. She thus "held" no UIM coverage greater than the tortfeasor's. In this case, the plain language of the policy and the undoubted common intent of the parties to the UIM contract is that the policy covers the bus driver as an employee of the school district. The language of the policy is unambiguous in this regard. The UIM endorsement covers anyone "occupying a covered auto." By whom is a policy of the fictitious being of a corporation "held" if not by corporate employees? Diana French thus "held" UIM coverage greater than the tortfeasor's liability coverage.

> [*French, supra,* 149 *N.J.* at 494, 694 *A.*2d 1008.]

The policy language controls the result of this appeal as well. We need not attempt to resolve the factual dispute over Breen's status as an employee of Cardinell. But there is no dispute that Breen resided with her parents Sally and Walter Pilcer when the accident occurred, or that the Pilcers were named insureds under the Cardinell policy. That policy's UIM coverage applied expressly to named insureds or *any family member* of named insureds, and the policy defined "family member" to mean "a person related to you by blood, marriage or adoption who is a resident of your household...." We have no doubt, based on the unambiguous language of the Cardinell policy, that that policy's UIM coverage was "held" by Ms. Breen within the meaning of that term as used in *N.J.S.A.* 17:28–1.1e. Because Breen "held" UIM coverage greater than the tortfeasor's coverage, the UIM coverage under the Cardinell policy was available to compensate her for her injuries. We note that the Appellate Division recently reached the same conclusion in a case involving facts closely analogous to those presented here. *See Barnett v. Prudential Property & Cas. Ins. Co.,* 304 *N.J.Super.* 573, 701 *A.*2d 732 (1997).

Although we hold that the Cardinell policy's UIM coverage constitutes a policy "held" for Ms. Breen for purposes of determining whether the tortfeasor's vehicle is underinsured, we note, as we did in *French, supra*, 149 *N.J.* at 494, 694 *A.*2d 1008, that policy drafters can attempt to address issues of UIM coverage by modifications of policy language. Under the standard form of the 1996 insurance agreement on file with the Department of Insurance, a vehicle is not considered underinsured with respect to a person not named as an insured under the policy in question but named as an insured under her own policy, unless the liability limit under her own policy exceeds that of the tortfeasor's vehicle. Under that formulation the tortfeasor's vehicle in this appeal would not have been underinsured with respect to Ms. Breen.

IV

As noted, *supra*, at 427–28, 710 *A.*2d at 422–423, the Appellate Division assumed that because *Aubrey* disapproved the decision in *Landi v. Gray, supra*, 228 *N.J.Super.* 619, 550 *A.*2d 768, Ms. Breen could not recover UIM benefits under the Cardinell policy. In an effort to avoid that result in this and other cases, the Appellate Division determined that *Aubrey* had effected a substantial change in the law and that insofar as it overruled *Landi* it should be applied only prospectively. 297 *N.J.Super.* at 513–15, 688 *A.*2d 647. We have now clarified that "our disapproval of *Landi* should be understood to refer only to the *Landi* court's invalidation of the exclusion of UIM coverage when an underinsured vehicle of a resident family member caused the claimant's injury." *Supra* at 429, 710 *A.*2d at 423–424; *accord Barnett, supra*, 304 *N.J.Super.* at 582–84, 701 *A.*2d 732. Thus, the Appellate Division's holding that *Aubrey* should be applied only prospectively was not required to sustain the result reached by that court.

The Association of Trial Lawyers as *amicus curiae* participated in this appeal and urged that we affirm the Appellate Division's disposition to the extent that it accorded *Aubrey* only prospective

effect, and asserted that *Aubrey* should be applied prospectively only to policies issued or renewed after June 8, 1995, in order to avoid prejudicing persons covered by policies issued prior to our decision in *Aubrey*.

As noted, the retroactive application of *Aubrey* is not an issue requiring resolution in connection with this appeal. Moreover, as clarified by *French*, we do not foresee that *Aubrey*'s holding will present significant questions of prospective application in future cases. Accordingly, we decline to address the issue.

We disapprove of those portions of the Appellate Division's disposition that determined that the retroactivity of *Aubrey* was germane to the result and that accorded *Aubrey* only prospective effect. As modified, we affirm the judgment of the Appellate Division.

*For modification and affirmance*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—none.